By the Court. Sandford, J.
The agreement between the parties, for the dissolution of the firm of Lowber & Le Roy, the disposition of its property, and the payment of its debts, was in writing, and was signed and delivered on the 4th day of April, 1846. The effort on the part of the defendant at the trial, was to influence and control the effect of this agreement, by a writing or schedule without signature or authentication, made out on the 5th of April, together with parol evidence of what was subsequently agreed upon between these parties and T. O. Le Roy & Co. The judge, after receiving the *216 testimony provisionally, instructed the jury that the terms of the agreement for dissolution, being clear and free from ambiguity, no parol evidence was competent to vary it; and that the list of assets could not affect it, unless it was annexed to the agreement, or was made a part of it by being communicated to the defendant before the final making of the agreement. The case turns upon the soundness of the judge’s construction of the terms of the contract executed by the parties ; for if those terms were free from ambiguity, clear and explicit; no one questions that it was incompetent to vary or impair them by parol evidence.
The proof of subsequent acts, falls equally within the well established rule excluding oral testimony. Where the contract has been carried into effect, the acts of the parties furnish more satisfactory evidence than their words, when the contract itself contains a latent ambiguity; but where its terms are clear-, such acts are inadmissible to vary or control its construction. The defendant relied much upon Chapman v. Black, (4 Bing. N. C. 187,) which was the case of a lease made out by letters, and there being great doubt on the language of the letters whether the parties had agreed for a present demise, or to draw up and execute a lease at a future time, evidence of possession and payment of rent was admitted in aid of the construction. Strong language was used by two or three of the judges, in respect of the competency of acts, as indicative of intention, but they were applied to the strong features of the case before them; while one judge, without referring to the acts at all, found sufficient in the letters to construe them into a present demise.
In this, and in several other reported cases in England, on the same question of a lease in presentí, or an agreement to lease ; there is no conflict with the rule of law to which we have alluded. The evidence was admitted on the express ground that the instruments in writing were ambiguous, in respect to the subjects to which they were applicable, or upon which the intention of the parties was brought to bear.
The admission of extrinsic evidence, to show the condition of the subjects of the contract, and the circumstances under *217 which it was made, is a wholly different matter, and ope upon which there is no dispute here. Nor was it seriously contended, if there were no latent ambiguity as to the terms of the agreement for dissolution between these parties, that either the list of assets, or the subsequent acts, would be competent to influence its construction.
We must therefore ascertain whether there was any latent ambiguity in the agreement. The defendant insists that the term assets, and the term machinery, as used in the contract, were thus ambiguous, and require the aid of the acts and declarations of the parties, in order to give them a sensible construction.
First. As to the word “ assets.” This is equivalent in its common acceptation to the term “ property,” and as used in this instrument, embraced all the property of Lowber & Le Roy which was not excepted. The defendant needs no evidence to explain a word which plainly gives to him all that the firm had, save so far as it is controlled by a clear exception. The exception here is “ the machinery,” and whatever “ appertains to or belongs to the machinery.”
Second. This brings us to the real point in controversy, was there any latent ambiguity in this contract, in respect of what was intended by the word “ machinery ?”
In its primary signification, this word would rather include the steam engine and fixtures, than either the pipe machine or the rolling mill; the two latter being more properly machines, and the former the combination of powers to put them in motion. The defendant’s object, is however, to withdraw the steam engine, as well as the rolling mill, from the operation of the term used in the contract.
We do not think that we can assume that a word of such extensive application in common parlance, as is the word 11 machinery,” is to be construed and defined when used in a contract, with the nicety of the lexicographers. And we must have recourse to the facts and circumstances. upon which the contract was made, in order to apply its terms to the objects of the contract. In applying it to those circumstances, the popular meaning of the terms must govern, when it is not inferrible *218 from, the contract or its subject matter, that they were used in some technical or other sense.
When Lowber & Le Roy dissolved, they had assets of all the kinds enumerated in this agreement, and they were indebted for the debts therein enumerated, besides the accounts for extra work on the engine and rolling mill. The assets, which one or the other of the parties insists constituted the machinery, were first, the pipe machine, second the steam engine, and third the rolling mill. The pipe machine was the plaintiff’s before the partnership. It was incumbered to its full value, so that it was of no particular advantage for any one to take, except for immediate use. There was no claim for or upon it, against the firm, by way of note or obligation; but there was an account against the firm for repairs done upon it by Stillman, Allen &. Co., to the amount of about $1200.
The steam engine was new, and so far as it appears, worth all it had cost. The firm owed its entire, cost, of which $3000 was in a note to Stillman, Allen & Co.; and $400 of the contract price, with about the same amount for extra work, was due to that firm in an open account. The rolling mill was also new, and had never been used. The firm owed its whole cost to Mr. Kemble as agent for the West Point Foundry, of which $2300 stood in their note to Mr. K., and the extra work, about $1700, in an open account.
Now by the first stipulation in the contract, the defendant was to pay all the outstanding notes against Lowber &. Le Roy. Of course he was to pay the note of $3000, given in part payment of the steam engine ; and the note of $2300, given for the rolling mill, exclusive of the extra work. By the third stipulation he was to have all the assets, “ not appertaining or belonging to the machinery.”
By the fifth stipulation, the plaintiff was to take “ all the machinery and such things belonging thereto” then on hand, and he was to pay all claims yet due thereon except such as were mentioned in the schedule of bills payable. The only claims of the kind mentioned in the schedule, were the notes to Kemble for $2300, and to Stillman, Allen & Co. for $3000. Finally, the plaintiff, for the security of the firm that he would *219 pay the debts he assumed, was to give the defendant security upon-the machinery he was to take.
Now applying these terms to the actual condition of things, and is there any room for a doubt as to what was intended by the word “ machinery ?” Can it be answered by the pipe machine, excluding the other two ?
The plaintiff was to pay all claims due on the machinery, except the bills in the schedule. But there was no bill or demand in the schedule which had ever been a claim upon, or in any mode grew out of the pipe machine. So that this language could not be applied to the pipe machine at all. How does it apply to the two others ? It is obvious that the application is perfect. There was a claim due and mentioned in the schedule, on the steam engine; there was a like claim mentioned in the schedule and due on the rolling mill. Thus one of the most important clauses of the contract, is made senseless by restricting the word “ machinery” to the pipe machine, while it has full scope and bearing when extended to the other two articles in dispute.
Take the next provision. The plaintiff was to pay the claims due on the machinery he was to take, except the two notes. There were such claims due on all three of the machines, (if we may so class them,) and thus the stipulation has full effect to provide for nearly $4000 of accounts due for extra and other work on those machines. But if we exclude the steam engine and rolling mill, there remain more than $2500 of accounts for work done on them, for the payment of which there is no provision in the dissolution ; for the defendant bound himself to pay only the scheduled debts, and these are not scheduled; and the plaintiff was not to pay any claims except on the machinery that he took. Thus if “ machinery” included all the three machines, the fifth article is full of meaning and every word of it applies to an existing object; if it did not include all three, the article is senseless, and the whole agreement defective in omitting to provide for what it professed to embrace.
The sixth stipulation, it is urged, shows a different meaning, in the expression, “ machinery I am to takethat this shows *220 there was machinery which the plaintiff was not to take. We do not think such an inference is legitimate from the language used; and when the stipulation is considered in the construction which the defendant desires to put upon the word “ machinery,” it leads to a very different conclusion. If that construction be correct, the plaintiff was liable to pay merely the $1200, due to Stillman, Allen & Co. for repairs &c., on the pipe machine ; and he was to make the defendant secure that he would pay it, by a mortgage on the pipe machine. In other-words, for the sake of obtaining a machine mortgaged for all it was worth, the plaintiff was to pay $1200; and the defendant was gravely to take security on the same incumbered machine that he would pay it punctually.
There is no such absurd consequence, if we consider the term “ machinery” as embracing all three of the articles in question. The sixth stipulation, as well as the others, then becomes sensible and operative upon existing things and circumstances.
Upon the whole, after a careful examination of this instrument, in connection with the state of things actually existing and upon which it professed to operate, we cannot find a shadow of ambiguity in its terms. The word “ machinery,” in its popular sense, would probably embrace engine and rolling mill, as well as the pipe machine ; and as used in this agreement, it cannot mean any less than the three.
We were much pressed with the extreme improbability of the defendant’s making such a contract, as he did make, upon this construction of the. agreement for dissolution. As to this, we cannot tell how anxious the defendant was to put an end to the partnership, nor what other motive may have influenced him. The folly or the wisdom of the contract, as one or another construction might be placed upon its terms, would be a dangerous element to introduce into the interpretation of agreements. It suffices for this case, that whatever were the views of the parties, they have expressed their agreement in terms too plain to be doubted or misunderstood.
As the list of assets was not made until the agreement for *221 dissolution was complete and perfect, the judge was correct in excluding it from the consideration of the jury.
The conflicting testimony of the subsequent acts and parol agreements of the parties, had much less to recommend it than the list of assets; and its exclusion with the latter was a matter of course.
The defendant makes a further point, that if by virtue of a new contract of sale of the engine and rolling mill by T. O. Le Roy & Co. to the plaintiff, the latter paid the demands in question himself or through that firm, as the consideration for the purchase of those articles, he cannot recover.
This consequence would not necessarily follow from such a sale as was supposed, because the defendant is not connected with it; and if the plaintiff chose to pay these demands, and at the same time and in the same transaction buy his own property of T. O. Le Roy & Co., it would still be money paid for the defendant. But the conclusive answer to the point is, that the plaintiff having become the owner of the mill and engine by the dissolution agreement, must be assumed to have first sold them to Le Roy & Co., or to some person from whom they bought, before there could be a sale to him by that firm. Nor would it alter the case, if T. O. Le Roy & Co. took the mill and engine as the property of the defendant; so long as it was in fact the plaintiff’s property and was used to pay the defendant’s debt. The controlling feature in the cause, is the effect of the agreement for the dissolution ; and as we have been unable to go behind what we conceive to be its plain and explicit terms, awarding the engine and mill to the plaintiff; the defence is at an end.
Motion for new trial denied.