PRATHER
v.
Ross.

`17  495`
`144 221`

*Friday, December* 13.

---

PRATHER and Another *v.* Ross.

Suit upon a promissory note. Answer: that at and before the assignment of the note to the plaintiff, the payee thereof, one *G. W.,* was indebted to the defendant in the sum of $850, by a written contract executed by him, as follows, viz., "I, *G. W.,* Land Agent of the *Ohio and Mississippi Railroad Co.,* agree to pay to *A.* six hundred dollars for waste grounds, which cover some eight town lots on the south side of the railroad; also, two hundred and fifty dollars for waste grounds and wood yard on the north side of the road. Witness my hand and seal." (Signed) " *G. W.,* Land Agent." [SEAL.] Reply: 1. Want of consideration. 2. That the indebtedness pleaded as a set-off is the indebtedness of the railroad company, a corporation

`17b 495`
`o155 586`

`17  495`
`Case 2`
`189US253`

`17  495`
`Case 2`
`160  136`

authorized to make such contracts; that the consideration thereof moved to said company, and not to the said *G. W.*, who was only the agent of said company, and, as such, had power to make such contracts, and was in the habit of signing said contracts in the form aforesaid; all of which was well known to the defendant. On the trial, the plaintiff produced a witness who testified that the consideration of said last named contract was that the defendant should convey to the company, in fee simple, the premises therein described, and that no such conveyance had been made.

*Held*, that the evidence introduced to show that the defendant had not kept his part of the written contract pleaded by him, by conveying the land to the company, was improperly admitted, there being no reply setting up the facts constituting the alleged failure.

*Held*, also, that it was competent for the defendant to prove, by a witness shown to be a resident of the neighborhood, and to be acquainted with the technical terms used in the construction of railroads, that the terms, "waste ground," meant earth or other material excavated from the bed of the road, and deposited on the ground adjoining.

*Held*, also, that where a question of construction of a writing arises from the obscurity of the writing itself, it must be determined by the Court, alone; but questions of usage, custom, and actual intention and meaning derived therefrom, are for the jury.

*Held*, also, that in order to bind the principal, and make it his contract, the instrument must purport on its face to be the contract of the principal, and his name must be inserted therein, and signed thereto, and not merely the name of the agent, even though the latter be described as agent; and hence, the contract pleaded as a set-off was not the contract of the railroad company, but the individual contract of the plaintiff.

*Friday,*
*December* 13.

APPEAL from the *Jennings* Circuit Court.

DAVISON, J.—This was an action by *Ross*, who was the plaintiff, against *Prather* and *Tripp*, upon a promissory note for the payment of $950. The note was given by the defendants to one *George W. Cochran*, who assigned it to the plaintiff. Defendants answered by two paragraphs: 1. *Prather* is the principal debtor, and *Tripp* executed the note as surety; that before it was assigned by *Cochran*, and before the defendants had notice of such assignment, he, *Cochran*, was indebted to *Prather* $850, by a written contract, in these words:

"VERNON, *October* 15, 1853.

"I, *G. W. Cochran*, Land Agent of the *Ohio & Mississippi Railroad Co.*, agree to pay *H. Tripp*, six hundred

dollars for waste grounds, which cover some eight town lots on the south side of the railroad; also, two hundred and fifty dollars for waste grounds and wood yard, (graded,) on the north side of the road, making a total of $850.

"Witness my hand and seal.

(Signed) "G. W. Cochran, [seal.]<br>Land Agent."

This contract is indorsed thus:

"Scripton, October 18, 1856.

"For value received, I assign the within to Hiram Prather.

(Signed) "Hagerman Tripp."

And defendants aver that Cochran is thus indebted to Prather, $850, which they offer to set-off, &c.

2. The second paragraph is also a defense of set-off, and is similar in its averments, except as to the contract which it sets up, which is as follows:

"Vernon, October 13, 1852.

"I, Geo. W. Cochran, Land Agent of the Ohio & Mississippi Railroad Co., hereby agree to pay Hagerman Tripp, the owner of the s. w. quarter of sec. 34, town. 7, north of range 8 east, in Jennings county, Indiana, $500, for right of way through the same for said railroad. This contract covers 80 feet in width; 40 feet on each side of the track. It is hereby agreed that said company shall not build or construct on said grounds any building, except car houses, depot and water station.

"Witness my hand and seal.

(Signed) "G. W. Cochran, [seal.]<br>Land Agent."

Upon this contract there is the following assignment:

"Scripton, October 18, 1856.

"For value received, I assign the within to Hiram Prather.

(Signed) "Hagerman Tripp."

To these defenses the plaintiff filed a general denial, and six special replies. To the second, fourth, sixth and seventh, demurrers were sustained. The third alleges, that

Nov. Term,
1861.

PRATHER
v.
Ross.

the defendants had notice of the indorsement of the note to the plaintiff, before, or at the time of, the assignment of the contracts to *Prather*. And the fifth avers, that for the promises set forth in the contracts there was no consideration. The issues were submitted to a jury, who found specially, "That *Prather*, at the time the contracts were assigned to him by *Tripp*, had no notice of the indorsement of the note to the plaintiff." They also found a general verdict in favor of the plaintiff for $1,085; and the Court having refused a new trial, rendered judgment, &c.

Upon the trial, the note with its indorsement, and also the contracts with their assignments, having been given in evidence, the plaintiff produced *George W. Cochran*, who testified that he executed the contracts set up in the answers as the agent of the railroad company; and that the consideration of each contract was, that *Tripp* was to release, or convey to the company, in fee simple, the premises therein respectively described; but that no such release or conveyance had been made. The admission of this evidence was resisted, on the ground "That there was no issue to which such evidence was applicable." But the Court admitted the evidence, and the defendants excepted.

This exception, it seems to us, was well taken. If the defendant, *Tripp*, in breach of his contract, failed to release or convey to the railroad company the premises described, &c., the facts constituting such failure should have been specially set up in a reply to the answers, in order to apprize the defendants of what they would be required, upon the trial, to repel by proofs. Van Santvoord's Pl. 408. But the record before us contains no such pleading, and, in its absence, no evidence tending to prove his failure so to release and convey was admissible. It is therefore obvious, that upon the ground assumed by the defendants, the evidence, in this instance, should have been rejected.

The plaintiff having closed his testimony, the defendants offered to prove by one *William D. Evans*, a witness, that he resided in the neighborhood of the lands described in the contracts; that he is acquainted with the technical terms used in the construction of railroads, and that the terms,

"waste ground," when used in railroad building, meant "earth or other material excavated from the bed of the road, and deposited on the ground adjoining. But the Court refused to admit the offered evidence, and the defendants noted an exception.

As has been seen, the contract pleaded as a set-off in the first paragraph of the answer, was for the payment to *Tripp* of six hundred dollars for "waste ground, which covers some eight town lots on the south side of the railroad; also, two hundred and fifty dollars for *waste ground* and wood yard, (graded,) on the north side of the road." Now, as there is nothing in the language of this contract necessarily involving the idea of a conveyance in fee simple, it was sought by the proposed evidence so to explain the terms in question, as to make the contract a mere settlement of the damages occasioned by depositing "earth or other material" on *Tripp's* lots, "and, perhaps, a license to use the wood yard as long as the railroad company might desire to use it."

For the purpose intended, the offered evidence may, or may not, have been effective, still it should, in our judgment, have been given to the jury for their consideration. Ordinarily, "the meaning of words, and the grammatical construction of the English language, so far as they are established by the rules and usages of the language, are *prima facie* matter of law to be construed and passed upon by the court. But language may be ambiguous, and used in different senses, or general words in particular trades and branches of business may be used in a new, peculiar or technical sense, and therefore, in some instances, evidence may be received from those who are conversant with such branch of business, and such technical or peculiar use of language, to explain and illustrate it." *Brown* v. *Brown*, 8 Met. 576. "If the question arises from the obscurity of the writing itself, it is determined by the court alone; but questions of custom, usage, and actual intention and meaning derived therefrom, are for the jury." 2 Phil. Ev., § 280. These expositions at once show that the proposed evidence was admissible, because, as we understand it, the witness was conversant "with the technical terms used in the construction of

Nov. Term,
1861.

Prather
v.
Ross.

railroads," and also with the peculiar meaning of the phrase, "waste ground," when "used in railroad building." Hence it was for the jury, and not the Court, to determine the sense in which that phrase was used by the contracting parties.

The appellee, however, has assigned a cross error, to the effect "that the Court erred in sustaining the demurrers to the second, fourth, and seventh paragraphs of the reply; but as in his brief he relies alone upon the validity of the second paragraph, that alone will be noticed. It reads as follows: "And for second reply, &c., the plaintiff says that the indebtedness set up as an off set is the indebtedness of the *Ohio & Mississippi Railroad Co.*, which is a corporation, duly authorized to make the contracts set forth in the answer, the consideration for which moved to her, and not to the said *Cochran*. That *Cochran* was the legally appointed agent of the company, and had full power to contract for, and bind her in the matters of said contracts; that he was in the practice of signing contracts on behalf of the company in the form and manner as these contracts are signed, and they were always and uniformly recognized by the company as binding on her; all which, &c., was well known to the defendants," &c.

The contracts upon which the answer is based commence in this form: "I, *G. W. Cochran*, Land Agent of the *Ohio & Mississippi Railroad Co.*, agree to pay," &c. And conclude thus: "Witness my hand and seal. *G. W. Cochran*, [SEAL.] Land Agent."

The appellee argues that by the contracts the railroad company is alone bound for payment, while on the other hand it is insisted that they are the contracts of "*George W Cochran.*" The usual rule in cases of this sort is, "that in order to bind the principal, and make it his contract, the instrument must purport, on its face, to be the contract of the principal, and his name must be inserted in it, and signed to it, and not merely the name of the agent, even though the latter be described as agent, in the instrument. Story on Agency, § 147. Tested by this rule, the instruments in question can not be held the contracts of the company, because she does not agree or promise to pay the several amounts

therein stipulated to be paid, nor is her name signed to either contract; and the result is, *Cochran*, who, though he describes himself as agent, really does agree to pay, having signed the instruments by his own name, is individually liable on the contracts. There are, it is true, several adjudicated cases apparently in conflict with the rule to which we have referred, but in this Court it has been uniformly adhered to, and we are inclined to follow it. *McClure* v. *Bennett*, 1 Blackf. 189; *Deming* v. *Bullitt*, *id.* 241; *Pitman* v. *Kinter*, 5 Blackf. 250; *Mears* v. *Graham*, 8 *id.* 144; *Crum et al.* v. *Boyd*, 9 Ind. 289.

We are of opinion that the Court, in sustaining the demurrer, committed no error. But the appellee makes another point. He says that the note in suit being joint, it was not competent to show that "*Tripp*" was only surety. Evidence to that effect was given in the lower Court without objection. In that Court, the point now made was not raised, and it is therefore not properly before us.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*H. C. Newcomb* and *J. Tarkington*, for the appellants.

*A. C. Downey* and *L. Bingham*, for the appellee.