Reissner *et al. v.* Oxley *et al.*

No. 7395.

REISSNER ET AL. *v.* OXLEY ET AL.

CONTRACT.—*Construction.*—*Interpretation by Acts of Parties.*—The parties to a contract may put their own interpretation upon it, so long as the result is not a contract which is in itself unlawful.

SAME.—When, by its terms, a contract is of doubtful or ambiguous meaning, resort may be had to proof of the situation and circumstances of the parties when they made it and of their transactions under it, for the purpose of ascertaining the true intention.

SAME.—*Jury.*—*Question of Fact.*—When resort is had to the situation and circumstances of the makers of a doubtful or ambiguous contract, and of the parties' transactions under it, for the purpose of ascertaining the true meaning, the question must be left to the jury as one of fact in the light of the evidence, including the contract itself.

SAME.—*Public Policy.*—*Possession of Chattel does not Show Title.*—There is nothing unlawful or against public policy, in an arrangement whereby one puts his goods in the possession of another as bailee, agent or factor, to sell, retaining the title thereto so long as unsold in himself.

SAME.—One who buys or contracts with reference to personal property, must enquire, at his peril, into the ownership, or at least the right of disposition in the one with whom he deals. Possession does not constitute ownership.

SAME.—*Instruction.*—*Consignment.*—*Sale.*—*Bailment.*—In an action for the recovery of personal property by a consignor against a sheriff holding the same under an execution against the consignee, it is not error to instruct the jury with reference to the contract between the consignor and consignee, that if the contract, in the absence of fraud, was one of sale to the consignee, the plaintiff could not recover, but otherwise, if one of consignment, that is, a contract by which the plaintiff retained the ownership of the goods, and put them in the possession of the consignee to sell and account to the plaintiff, and that, under the evidence, the jury might determine which construction the parties themselves had placed upon the contract.

PRACTICE.—*Special Instruction Must be Requested.*—If a party desire a further explanatory instruction in addition to one given, which is good as far as it goes, he must specially request it, in order to present the question on appeal.

From the Marion Superior Court.

*S. Claypool, H. C. Newcomb* and *W. A. Ketcham,* for appellants.

*W. Morrow, N. Trusler* and *J. A. Henry,* for appellees.

WOODS, J.—The appellees obtained a judgment against the appellants for the recovery of possession of personal property. The appellant Reissner, by virtue of an execution issued to him as sheriff, had levied upon the articles in question as the goods of Everett & Homan, the execution defendants; and the disputed point in the case was, whether the goods, in fact, belonged to Everett & Homan, or to the appellees, Oxley & Giddings.

The evidence shows that the appellees, who were wholesale dealers in gas fixtures and like goods, in New York City, entered into a contract for supplying their goods to Everett & Homan, who were doing business in Indianapolis, and, under that agreement, shipped to Everett & Homan the goods in dispute. Evidence was also given of the previous dealings of the parties, as well as of their dealings under the contract, of which the following is a copy:

"This agreement between Oxley & Giddings, of New York City, parties of the first part, and——Everett and——Homan composing the firm of Everett & Homan, of the city of Indianapolis, Indiana, parties of the second part, witnesseth: that for and in consideration of the mutual covenants herein contained, and for other good and valuable considerations, the parties of the first part hereby covenant and agree to ship and consign goods, wares and merchandise from time to time to the extent of about three thousand dollars in amount, including the merchandise already shipped and consigned to the parties of the second part; it being mutually agreed that the goods heretofore consigned and hereafter to be shipped and consigned, shall be on the average of about fifteen hundred dollars in amount. The parties of the second part hereby covenant and agree to keep all such merchandise so shipped and consigned to them fully insured in some responsible insurance company, in the name or for the benefit of the parties of the first part. That if at any time such consignment should exceed in value the sum of fifteen hundred dollars, then in that case the parties of the second part are to give their prom-

issory notes to the parties of the first part, for their use, for such sums or amounts, and on such time, as follows: Each month's accounts to be settled by four (4) and six (6) months' notes, and for the faithful performance of the covenants and agreements herein contained, the parties of the second part hereby bind themselves jointly and severally firmly by these presents. In witness whereof, the parties hereto have set their hands and seals this 22d day of November, 1875.

"C. F. OXLEY, for OXLEY & GIDDINGS.    [Seal.]

"P. E. EVERETT, for EVERETT & HOMAN.    [Seal.]

"And it is further mutually agreed that the party of the first part shall continue to keep on consignment the amount of fixtures as above agreed for the term of two years, and at the expiration of that time the party of the second part does hereby agree to keep all fixtures that they may have, and in payment thereof to give to the party of the first part their notes divided in three equal parts for such amounts as the fixtures may be charged, at four, eight and twelve months, unless it is mutually agreed to continue the above agreement.

"And it is further agreed by the party of the first part, that should the party of the second part at any time be short and unable to meet their notes given, that the party of the first part will accept a draft on them for such part as they may be short, with a new note for thirty or sixty days, with interest, and the party of the second part is to take care of the second note without any help. In witness whereof, the parties have hereunto set their hands and seals this 22d day of November, 1875.

(Signed)    "C. F. OXLEY, for OXLEY & GIDDINGS.    [Seal.]

"P. E. EVERETT, for EVERETT & HOMAN. [Seal.]"

The superior court did not undertake to put a construction upon this contract, but left it to the jury, under the following instruction, which is complained of by the appellants, to wit:

"*Second.* The question as to the ownership of the property, considered without reference to the question of fraud, turns upon the meaning to be given the written contract exe-

Reissner *et al. v.* Oxley *et al.*

cuted by the plaintiffs and Everett & Homan. If the contract was one of sale to Everett & Homan, the plaintiffs action must fail. If it was one of consignment, that is, a contract by which the plaintiffs retained the ownership of the goods, and put them in the possession of Everett & Homan, to sell and account to the plaintiffs, the verdict must be for the plaintiffs, unless the defendants have shown by a clear preponderance of the evidence that the transaction was, as to the creditors of Everett & Homan, a fraudulent one. The contract is ambiguous, and you may consider it in connection with all the other evidence in the cause. If the parties by whom it was executed treated and construed it as a contract of sale, and so acted upon it, then you may give it that effect; if, upon the contrary, they acted under it as, and, by their acts and conduct, in good faith treated and construed it to be, a contract of consignment of goods for sale, then you may give it that meaning and effect."

The position of counsel for the appellants is stated in their brief, as follows:

"We insist:

"I. That it was the duty of the court to construe the contract.

"II. That if the whole contract, exclusive of the words 'ship and consign,' imported a sale, and the word 'consign' was ambiguous, it was the duty of the court to give to the ambiguous expression a meaning consistent with the rest of the contract, and not leave that question to the jury.

"III. That if the question of the meaning of the written contract should have been left to the jury, it should have been left to the jury fairly to decide on all its merits, and not with an assumption that there could be but one possible meaning given to the word 'consign.' It is assumed by the court, in this second instruction, that no possible meaning could be given to the word 'consign' except one that would import an agency. Consignment and agency are treated as interconvertible, and, under this instruction, the jury was directed, in effect, that to

consign, however used, implied, necessarily, the creation of an agency; that it could have but one meaning.

"IV. The tenor of the judge's instructions, taken as a whole, was to direct the jury that unless we had shown that the word 'consign' was used for a fraudulent purpose, their finding must be against us, and we were placed under a much heavier burden than was right."

While there has been, and is perhaps yet, a difference of opinion among the members of this court, in reference to the interpretation of this contract, if construed without looking beyond its terms, we are agreed that it was proper to leave it to the jury to determine, under the evidence which was admitted without objection, and, indeed, was adduced by both sides, what construction the parties themselves had placed upon it; and that, for the purpose of submitting this question to the jury, the instruction which was given is not justly subject to the objections urged against it.

The right of parties to put an interpretation upon their own contracts, even to the extent of doing away, practically, with the ordinary and plain meaning of terms, can not well be denied, so long as their interpretation does not result in a contract which for some reason is in itself unlawful. And the cases are numerous and consistent, which permit a resort to proof of the circumstances or situation of the parties, when their contract was made, and of their transactions under it, when its terms are of doubtful or ambiguous meaning, for the purpose of arriving at the true intention, and, when this is done, the question must be left to the decision of the jury substantially as was done in this instance.

See the following authorities, which are more or less in point: *Bates* v. *Dehaven,* 10 Ind. 319; *Symmes* v. *Brown,* 13 Ind. 318; *Bell's Adm'x* v. *Golding,* 27 Ind. 173; *Conwell* v. *Pumphrey,* 9 Ind. 135; *Wilcoxen* v. *Bowles,* 1 La. An. 230; *Lowber* v. *Le Roy,* 2 Sandf. 202; *Williamson* v. *McClure,* 37 Pa. St. 402; *Prather* v. *Ross,* 17 Ind. 495; *Eaton* v. *Smith,* 20 Pick. 150; *Etting* v. *President, etc.,* 11 Wheat. 59; *School Dis-*

*trict* v. *Lynch,* 33 Conn. 331; *Watson* v. *Blaine,* 12 Serg. & R. (Pa.) 131; *Harper* v. *Kean,* 11 Serg. & R. (Pa.) 280; *Frederick* v. *Campbell,* 14 Serg. & R. (Pa.) 293; 2 Pars. Con. (6th ed.) 493.

Instead of the criticism, that the instruction assumes " that there could be but one possible meaning given to the word ' consign,' " it would be more accurate to say that it was a direct charge that there could be but one meaning to the word which would enable the plaintiffs to recover, and that unless that meaning was shown to have been the one intended, the verdict should be for the appellants, " that is " (in the language of the instruction), " a contract by which the plaintiffs retained the ownership of the goods, and put them in the possession of Everett & Homan, to sell and account to the plaintiffs."

There was certainly no error in this. It was a clear and distinct statement of the exact point in dispute, to be determined according to the evidence, and it is not to be presumed or supposed that it could have been taken by the jury as a judicial definition of the word *consign,* in any of its forms, as used in the contract. On the contrary, the jury is explicitly told that " the contract is ambiguous," and that they should " consider it in connection with all the other evidence in the cause."

There is clearly no error in what is said in the instruction, and if the appellants desired the court to add an explanation of the definitions of the lexicographers, they should have asked for it. We do not perceive, however, that further instruction in this particular was desirable or necessary.

There certainly are strong indications in the contract, that the parties intended a bailment of the goods shipped under it for and during the period of two years at least, and, if in good faith and without disagreement between themselves, they so construed the instrument and conducted their business upon that understanding, as the evidence strongly, if not conclusively, tends to show they did, there was nothing unlawful or against public policy in their so doing, and there is no legal

or equitable grounds upon which the creditors of either party may insist that the intention of the parties shall be thwarted.

It is argued that the tendency of the contract, if construed or treated as establishing a bailment, was to confer upon Everett & Homan an appearance of ownership, and so to give them an undue credit. But the argument is manifestly fallacious. It would strike down all contracts of bailment, agency, conditional sale, hiring and the like, whereby the property of one is put in the possession and control of another. Possession is one of the *indicia* of property, but no dealer can act upon it as conclusive. If he buys or contracts with reference to personal property, he must, at his peril, enquire into the real ownership, or at least into the right of disposition. Any other rule would be impracticable, and make business, except on the most limited scale, impossible.

Upon the question whether the contract was in fact fraudulent, the charge of the court was quite as favorable to the appellants as it ought to have been, and no particular error is pointed out.

The judgment is affirmed, with costs.