## C. Stuart Beattie v. The National Bank of Illinois.

1. NEGOTIABLE INSTRUMENTS—*Payment of Drafts—Forged Indorsements.*—The acceptor of a bill of exchange must satisfy himself when it is presented for payment, that the holder traces his title through genuine indorsements; for if there is a forged indorsement it is a nullity and no right passes by it.

2. SAME—*Payment of Drafts to Others Than the True Owner.*—Payment to a holder of a draft under a forged indorsement is invalid as against the true owner. Such owner may require it to be paid again.

3. SAME—*Liability of Indorser.*—An indorser of commercial paper warrants the genuineness of all signatures to such paper and all prior indorsements thereon, and that his title thereto is genuine. He is liable if his title proves defective.

Assumpsit, on a bill of exchange. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinon filed April 15, 1897.

HARRY VINCENT, attorney for appellant.

ARNOLD HEAP, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellant sued the appellee before a justice of the peace for the amount of a draft for $133.25, drawn upon appellee by the First National Bank of Council Bluffs, Iowa, to the order of George A. Bent, and by said Bent indorsed and delivered to appellant, for value, and upon being defeated

in said suit, he appealed to the Circuit Court, where, again, upon a trial by the court, judgment went against him, and he now appeals to this court.

The draft and indorsements offered in evidence, were as follows:

"First National Bank,

Council Bluffs, Iowa, Sept. 21st, 1891.

No. 224,070.                                    $133.25.

Pay to the order of Geo. A. Bent one hundred and thirty-three and 25-100 dollars.

A. W. Rickman,

Cashier.

To National Bank of Illinois, Chicago, Illinois."

(Indorsed:)  " Geo. A. Bent, for deposit Bank of Commerce, account of C. Stuart Beattie."

The case was tried in the Circuit Court upon an agreed partial statement of facts, as follows:

" That George P. Bent, of Chicago, Illinois, sent a collection to the First National Bank of Council Bluffs, Iowa, amounting to $133.50; that said bank made the collection, and in return drew its draft on defendant, National Bank of Illinois, for $133.25, payable to the order of George A. Bent, Chicago, by error; that draft was mailed to George A. Bent, Chicago, Illinois; that George A. Bent not being the person intended to receive the draft, but an entire stranger to the First National Bank of Council Bluffs, received the draft in question; that George P. Bent was the one intended to be made the payee in the draft in question; that George A. Bent never had any business transactions with the defendant or the Council Bluffs Bank, and the latter bank was never indebted to George A. Bent; that the draft was indorsed to the plaintiff by George A. Bent; that the draft was deposited by the plaintiff for his account in the Bank of Commerce of Chicago; the Bank of Commerce clears through the Union National Bank, Chicago, and the draft was paid by defendant through the Union National Bank.   When the draft was returned by defendant to the Council Bluffs Bank it was discovered that George

A. Bent had received the draft intended for George P. Bent; that the First National Bank of Council Bluffs and George P. Bent prepared affidavits, which being attached to the draft, it was returned to defendant, who then returned it to the Union National Bank, who redeemed it under the rules of the Clearing House of Chicago. The Union National Bank presented it to the Bank of Commerce, which latter bank took it up and required plaintiff to make the same good. Plaintiff took the draft to defendant bank and ascertained that defendant had funds of the drawer in its hands sufficient to cover the draft at all times subsequent to its date."

Such stipulated facts, and the draft and indorsements already copied, together with the testimony of appellant and one F. F. Sholl, constituted all the evidence.

The appellant testified: "Am the owner of the draft in question. On Saturday afternoon following the 21st of September, 1891, about 4 o'clock p. m., Beach, who was then a broker with an office in the Chamber of Commerce Building and a client of mine, came to my office with the draft in question indorsed by Geo. A. Bent. Beach informed me that the draft had been given to him by Bent a few minutes before with a request that he, Beach, would get him, Bent, the money for it. Beach further informed me then that he was well acquainted with Bent, having known him three or four years previous to this time at Minneapolis. That Bent was a traveling man and had received this draft as a remittance and desired to leave Chicago that Saturday night, and could not do so unless he could get the draft cashed by some person, as Bent had gotten it from the post office too late for the bank. I gave Beach $50, being all the currency that I could spare, and made a check on the Bank of Commerce for $83.25 to the order of George A. Bent, telling Beach where I thought he could get my check cashed that evening, and it was cashed and paid the following Monday. Beach left my office and returned in about five minutes with a gentlemen whom he introduced as Mr. Bent. Mr. Bent said Mr.

Beach had told him that I wanted to see him, Bent. I said that I was pleased to see him, but had no interest in him beyond the fact that I had cashed a draft made to his order and hoped it was all right. Bent took from his pocket a stamped envelope bearing the card of First National Bank of Council Bluffs, Iowa, printed upon it and addressed to. George A. Bent, Chicago, Illinois, with no other address, and said, "Its all right, Mr. Beattie, this is the envelope in which the bank sent me the draft, and here is the letter with it." Mr. Bent took a letter from the envelope, opened it and offered it to me. I saw that it was upon a letter-head of the First National Bank of Council Bluffs, Iowa, but did not go into the matter any deeper, assuring him that there was no question about the matter in my mind, and after some general conversation, which I do not remember, he and Beach left my office together. On Monday morning I deposited the draft in the Bank of Commerce, which credited it to my account conditionally subject to its future payment, and I heard nothing more of the matter until about the 20th of October, 1891. The Bank of Commerce advised me that it had charged against my account the amount of this draft, it having been returned under the Clearing House rules for an alleged forged indorsement. The same day the Bank of Commerce delivered the draft to me, and also an affidavit which accompanied the draft in the words and figures following, to wit:

"State of Iowa,    } ss.
Pottawottamie County. }

COUNCIL BLUFFS, IOWA, October 16, 1891.

A. T. Rice, assistant cashier of the First National Bank, deposes and says that on September 15, 1891, the First National Bank of Council Bluffs, Iowa, received from Geo. P. Bent, No. 223 Canal street, Chicago, Illinois, for collection, a note made by Max Bournicus for one hundred and thirty-three and 50-100 dollars ($133.50), and due September 27 and 30, 1891. That on September 21, 1891, this note was paid and on the same date the First National Bank made its draft No. 224,070 for $133.25, exchange 25 cents, in pay-

ment of said note, on Nat'l Bank of Illinois, Chicago, Ill., to the order of George A. Bent, which was paid by Nat'l Bank of Illinois, on September 28, 1891, and that the name of Geo. A. Bent was written in error, and that Geo. A. Bent has unlawfully appropriated said draft to his own use and received the proceeds thereof."

The George P. Bent referred to in this affidavit was at the time of the making of the draft, and had been a great many years previous to that time, a large manufacturer of pianos and organs, with a factory on Canal street, and his number 223 Canal street.

Said F. F. Sholl testified: " Am superintendent of the city delivery of the post office in the city of Chicago, and know of the course of business of that office, in year 1891, which was the same as it is at the present time regarding the receipt and delivery of mail matter. A letter mailed at Council Bluffs, Iowa, addressed to George A. Bent, Chicago, Illinois, without any further direction, would go first to the directory department, where examiners would seek to locate the address of George A. Bent; if that address could not be located in the directory, the letter would go immediately to the general delivery. A letter addressed to George A. Bent, 223 South Canal street, Chicago, would be delivered at that number by the carrier, although the person there had a different middle initial. A letter addressed to George P. Bent, without further or other directions, would have been delivered to the address of George P. Bent, if known or shown in the directory. A letter going to the general delivery addressed to George A. Bent would be delivered to any person claiming that name and calling for mail matter."

There being no question about the facts, there arises upon this record, practically but a single question of law, and such question is as to the liability of the appellee to the appellant. That question must be decided against the appellant. 2 Daniel on Negotiable Inst., Sec. 1225, says:

" The maker of a note or the acceptor of a bill must satisfy himself, when it is presented for payment, that the holder traces his title through genuine indorsements; for if there

Beattie v. National Bank of Illinois.

is a forged indorsement, it is a nullity and no right passes by it, and payment to a holder under a forged indorsement would be invalid as against the true owner who might require it to be paid again." Smith v. Chester, 1 Term R. 654; Canal Bank v. Bank of Albany, 1 Hill, 287; Goddard v. Merchants Bank, 2 Sandf. 247.  *  *  *

" The payer should also satisfy himself of the identity of the holder; for he can not defend himself against the real payee by showing that he paid the amount of the bill or note to another person of the same name in good faith, and in the usual course of business." Graves v. American Exchange Bank, 17 N. Y. 205.

The same author, Vol. 1, Sec. 672, says :

" The indorser contracts that the bill or note is in every respect genuine, and neither forged, fictitious or altered," and cites a large number of authorities.

" The indorser also warrants the genuiness of all the signatures to the paper.  *  *  *  Inasmuch as the indorser also warrants that he has a perfect title to the paper by indorsement, and is liable if his title proves defective; and since no title passes on a forged indorsement, it follows as a necessary consequence that the indorser must warrant the genuineness of the prior indorsements." Tiedeman on Commercial Paper, Sec. 259; see, also, Chambers v. Union Nat. Bk., 78 Pa. St. 205; and Graves v. Am. Ex. Bk., *supra.*

According to the foregoing authorities, it is clear that if appellant had not taken up the draft he would have been liable to the appellee upon his indorsement, and that being so, he can not recover of the appellee, upon paper to which he has no lawful title. The fatal defect in appellant's case is that, under the evidence, he is not the lawful owner of the draft.

The question strongly insisted upon by appellant, as to who shall suffer for the negligence of the drawer, does not appear to us to be in this case.

No matter how great the negligence of the drawer, the Council Bluffs Bank, there seems to have been none on the part of the appellee.

The judgment will be affirmed.