LAWRENCE E. BOLLMAN, ET AL. *v.* INDIANAPOLIS MACHINERY CO., INC., ET AL.

[No. 970A147. Filed December 28, 1971. Rehearing denied February 1, 1972. Transfer denied November 20, 1972.]

*William H. Krieg, Richard D. Wagner, Krieg, DeVault Alexander & Capehart,* of Indianapolis, *George N. Craig, Craig & Craig,* of Brazil, *Melville E. Watson,* of Greenfield, for appellants.

*Alan H. Lobley, Ice Miller Donadio & Ryan,* of Indianapolis, *Theodore R. Dann, Dann Backer Pecar & Newman,* of Indianapolis, for appellees.

WHITE, J.—This is an appeal from a judgment for defendants in a class action brought for the purpose of reallocating to other members of a profit sharing plan (for employees of defendant corporation herein called "Machinery"), trust funds which plaintiffs claim have been wrongfully allocated to defendants Borinstein and Letzter and to remove them and other individual defendants from their positions as trustees and committeemen of the plan and trust.

The trial court's finding of facts, conclusions of law, and judgment are as follows:

"I. This is an action brought by John W. Curd, Ralph B. Flint, James Coryell, Lawrence E. Bollman, James McGraw and Myron Feinberg, as members of the Indianapolis Machinery Co., Inc., Profit Sharing Plan and Profit Sharing Trust, on behalf of themselves and all other members except the individual defendants herein. John W. Curd, Ralph B. Flint and James Coryell have withdrawn as nominal plaintiffs herein.

"II. Indianapolis Machinery Company, Inc. (hereinafter called Machinery) is an Indiana corporation with its principal office at 1959 South Meridian Street, Indianapolis, Indiana, generally engaged in two principal businesses, the conduct of a steel warehousing business and a new and used machinery business. Machinery was incorporated on August 23, 1929, under the Indiana General Corporation Act of 1929, as amended. It was originally named Indianapolis Machinery & Supply Co., Inc., and subsequently its name was changed to Indianapolis Machinery Company, Inc.

"III. On or about December 1, 1952, Machinery became a party to and established a certain profit-sharing plan (hereinafter called the "Plan") and a profit-sharing trust (hereinafter called "Trust"). Copies of the instruments establishing and governing the Plan and Trust are attached as Exhibits B and C, respectively to plaintiffs' complaint and are incorporated in these findings as if herein fully repeated.

"IV. Article III Section 1 of the Plan and Trust provided that all regular full-time salaried employees, over 23 years of age, who had been with the company three or more years had the right to become members.

"V. Article IX Section 1 of the plan provides as follows:
'As of the retirement date of a Member he shall retire from the employ of the Employer unless the Employer by its Board of Directors shall request his continuing as an Employee of the Employer on a year to year basis. If such Member so continues in the employment of the Employer, he shall continue to be treated in all respects as a Member until his actual retirement. No retirement benefits shall be payable to a Member until his actual retirement, and all retirements shall be effective as of an anniversary date.'

"VI. Article I Section II of the Plan provides:

'The words "retirement date" mean the anniversary date nearest the sixty-fifth birthday of a member, provided, however, that if a Member is sixty-five years of age or over at the inception date of this Plan, then his retirement date shall be the second anniversary date thereafter. Anything herein stated to the contrary nowithstanding, the Board of Directors of the company shall have the right to request a Member to remain in the employ of the company after his normal retirement date in extraordinary circumstances and such Member shall continue to enjoy the benefits of this Plan.'

"VII. At the inception of the Plan, Edwin E. Letzter was and has been continuously ever since a regular, full-time salaried employee of Machinery and was in excess of 65 years of age.

"VIII. At the inception of the Plan, Louis J. Borinstein was and has been continuously ever since a regular, full-time, salaried employee of Machinery and was in excess of 65 years of age.

"IX. That on November 22, 1954, the Board of Directors of Indianapolis Machinery Co., Inc. with plaintiff Myron Feinberg as a member thereof and voting in favor, unanimously adopted the following resolution:

'RESOLVED, that Louis J. Borinstein and Edwin E. Letzter, and each of them, be, and they hereby are, requested to remain in the employ of the company on a year-to-year basis until such time as such employment shall be terminated by mutual agreement between the corporation and each of them respectively, and that each of said employees so long as they shall so remain in the employ of the company shall continue to enjoy the benefits of the corporation's Profit Sharing Plan.'

"X. That said board in adopting the resolution set forth in Finding No. IX acted in good faith, exercised its sound discretion and was free of fraud or oppression.

"XI. That during the entire existence of the Plan and Trust the accounts of Edwin E. Letzter and Louis J. Borinstein have received credits in accord with the provisions of said Plan and Trust.

"XII. That Myron Feinberg was a Trustee and Committeeman of the Plan and Trust from the time of its inception until January 14, 1964. That defendants Louis J. Borinstein, Edwin E. Letzter and Marcus A. Feinberg and Mary E.

Schmidt have been Trustees and Committeemen of the Plan and Trust from its inception to the present time.

"The Court now concludes the law to be:

A. The law is with defendants and against plaintiffs on the issues formed by each paragraph of the complaint and the defendants answer thereto.

B. The plaintiffs and the defendants Indianapolis Machinery Co., Inc., take nothing by plaintiffs complaint.

C. The defendants recover their costs in this action.

"WHEREFORE IT IS ORDERED AND ADJUDGED That plaintiffs and defendant Indianapolis Machinery Company, Inc. take nothing on the complaint sued on herein and that plaintiffs pay the costs of this action." (Tr. pp. 866-69).

The parties have agreed that the following is a correct statement of the issues for review on this appeal:

"1. Has the defendant Louis J. Borinstein been a regular, full-time salaried employee of the Indianapolis Machinery Co., Inc. within the meaning of the Indianapolis Machinery Co., Inc. Profit Sharing Plan so as to qualify as a Member of the Indianapolis Machinery Co., Inc. Profit Sharing Plan and Trust?

"2. Were the defendants Louis J. Borinstein and Edwin E. Letzter properly extended as provided in the Indianapolis Machinery Co., Inc. Profit Sharing Plan as Members of such Plan and Trust past the mandatory retirement age provided in the instruments governing such Plan and Trust?

"3. Have the individual defendants wrongfully allocated funds to the accounts of the defendants Louis J. Borinstein and Edwin E. Letzter under such Plan and Trust?"

Implicit in the phrase "the issues presented for review" as that phrase is used in Appellate Rule 8.3(A)(3) which prescribes the arrangement and contents of the appellants' brief, and as we assume the phrase was used in the briefs of both parties here, is that the resolution by the appellate tribunal of the issues stated will determine whether the trial court has committed reversible error. Therefore, since the questions numbered 1, 2 and 3 in the agreed statement of issues, are questions which were issues before the trial court,

we must infer that the appellant asserts (and the appellee denies) that the court committed error in the answers it made to those questions or, if it made no answer, it committed error by not answering them.

We conduct our review under the presumption that the judgment of the trial court is correct. The effect of that presumption is to saddle the appellants with the burden of convincing this court that the trial court did err. *Echterling* v. *Jack Gray Transport, Inc.* (1971), 148 Ind. App. 415, 267 N. E. 2d 198, 201, 24 Ind. Dec. 682, 685.

## I.

We note that the trial court, by its finding of fact numbered VIII, has given a direct and affirmative answer to the question posed as issue No. 1. That finding is:

"At the inception of the Plan, Louis J. Borinstein was and has been continuously, ever since a regular, full-time, salaried employee of Machinery. . . ."

By having made the foregoing affirmative answer as his own finding of fact, the trial court has impliedly held that, 1) the question of whether Mr. Borinstein was a regular, full-time, salaried employee was a question for the court to answer (not merely for the administrators of the Plan or the Directors of Machinery to answer), and 2) that (regardless of where the burden of proof may have resided) the preponderance of the evidence established that he was a regular, full-time salaried employee of Machinery, within the meaning of Machinery's Profit Sharing Plan. What meaning he may have ascribed to that term as used in the profit sharing plan is not disclosed in the findings of fact or conclusions of law. It can only be arrived at by a process of deduction. By determining from the evidence most favorable to such findings, the highest degree of regularity and the largest quantum of time devoted by Mr. Borinstein to his employment by Machinery, we can arrive at what is at least one example

of what the trial court determined to be the meaning of "regular, full-time"[1] as those words are used in the Plan.

As a part of their summary of the evidence supporting that finding appellees quote a finding made in a related lawsuit on the same day this case was decided, which we quote here in part:[2]

"Louis J. Borinstein during the years 1963 through 1968 was a vice president and director of Machinery. Although he never has had an office at Machinery, he has been active in its affairs continuously since its formation. In the early years of the business he arranged the necessary financing and through the early 1930's guaranteed all of Machinery's notes at the banks. At this time and subsequently, his primary business interest was that of a senior partner in A. Borinstein Co., and he devoted his principal energies to that business. From his business contacts at A. Borinstein Co., and through his various community activities, including many years as president of the Indianapolis Chamber of Commerce, he aided Machinery in developing potential customers. From the time of its incorporation until 1941, he received no compensation from Machinery. After Machinery had developed its own financial stability and customer relations in the early 1940's, Louis J. Borinstein continued to maintain current knowledge of the financial affairs of Machinery and, up to the time of the trial, had served as an adviser and consultant to Machinery. He has held himself available and kept himself knowledgeable to serve in the capacity as financial adviser prior to and since 1963 and has continuously kept himself available to advise Machinery in any areas in which it might call upon him and has, in fact, served as an adviser and consultant to Machinery up to the time of the trial. Commencing in 1941, he received a salary of $5,000.00 a year and has received it up to the present except for the years 1947 through 1949 when his health was such that he could not make his services available to the corporation."

1. That Mr. Borinstein was "salaried" at the inception of the plan is conceded. Our disposition of this issue renders it unnecessary for us to consider whether he was salaried at all times since the Plan's inception.

2. By quoting that finding we do not imply that it is of any effect in this case as a "finding"; it is, however, a good summary of the evidence pertinent to the issue here. Apparently only one member of the "class" which is plaintiff here was a party (individually) to the related case which was one of four cases (including the case at bar) which were consolidated for trial.

Mr. Borinstein himself testified:

"I discuss it [the financial situation at Machinery] with Mr. Solow, probably fifteen (15) or twenty (20) times a year. I discuss it with Mr. Letzter, I discuss it with Mr. Marcus Feinberg. As a matter of fact Myron Feinberg had a standing invitation to come to my home to dinner, and he came quite frequently and after dinner he would spend two (2) or three (3) hours discussing the business with me and getting my ideas in regard to the business, and incorporated some of those ideas in to the business."

Appellees concede that if "regular full-time salaried employee" means one who works eight hours a day, five days a week, defendant Borinstein does not qualify. They also concede that such an interpretation of the phrase as used in the Plan is possible but "is not the only reasonable interpretation that can be afforded the provision in question." We see no basis for interpreting "regular full-time" as meaning any fixed, immutable, and arbitrary number of hours per day or days per week, since standards and concepts of both what is regular and what is full time vary from industry to industry, institution to institution, locality to locality, and era to era. What has been described as constituting Mr. Borinstein's work for Machinery, however, meets no known standards of regularity or fullness of working time of any era, locality, or employment. Neither is there any contention that Mr. Borinstein's work pattern with Machinery is typical of its employees generally. In fact there is no contention that any other of its employees has ever followed such a pattern. The only evidence is that the regular working hours of salaried employees at Machinery were from 8:00-8:30 until 5:00.

But on the premise that the term "regular, full-time salaried employee" is so vague, or ambiguous, as to include within its reasonable interpretation, or construction, the employment pattern followed by Mr Borinstein, appellees contend that the Committee's and Machinery's having considered him an eligible employee, gives the clause that practical construction, which is now binding on all concerned.

The plan contains these provisions :

"15. The Committee shall have the duty and authority to interpret and construe the provisions of this Plan, to decide any disputes which may arise with regard to the rights of Employees, members and their legal representatives or beneficiaries under the terms of this Plan and trust agreement, and in general, to direct the administration of this Plan and the trust agreement.

"16. The Committee shall determine the eligibility of Members in accordance with the provisions of this Plan from the information furnished to it by the Employer in accord with the request of the Committee."

Also cited is *Gaylord* v. *City of Lafayette* (1888), 115 Ind. 423, 430, 17 N. E. 899, and other cases of like import, stating:

"In cases where the writing is indefinite or the language ambiguous and of doubtful construction, the practical interpretation given it by the parties themselves in carrying out their purposes, is entitled to great, if not controlling weight and influence. *Reissner* v. *Oxley*, 80 Ind. 580; *Chicago* v. *Sheldon*, 9 Wall. 50."

The basic fallacy in this argument is that it does not support the finding made by the trial court. The court did not find that the Committee made a determination that Mr. Borinstein was a regular full-time employee and that such determination is binding on the class who are plaintiffs here. The court made its own finding and if the court had ascribed a reasonable meaning to the language "regular, full-time" as provided in the Plan, its finding would not be sustained by the evidence most favorable thereto. Such evidence would sustain the opposite finding that he never was a regular full-time employee of Machinery.

We hold that the trial court did err in finding that Louis J. Borinstein was, at any time, a regular, full-time employee of Machinery.

## II.

The second issue, whether the trial court erred in reaching its implied conclusion that Borinstein and Letzter were prop-

erly extended past the mandatory retirement age, is now moot as to Mr. Borinstein by reason of our holding that the court was in error in finding that he ever was a regular full-time employee of Machinery. The issue remains, however, as to Mr. Letzter. The board action is recited in the trial court's findings IX and X, as follows:

> "IX. That on November 22, 1954, the Board of Directors of Indianapolis Machinery Co., Inc. with plaintiff Myron Feinberg as a member thereof and voting in favor, unanimously adopted the following resolution:
>
> > 'RESOLVES, that Louis J. Borinstein and Edwin E. Letzter, and each of them, be, and they hereby are, requested to remain in the employ of the company on a year-to-year basis until such time as such employment shall be terminated by mutual agreement between the corporation and each of them respectively, and that each of said employees so long as they shall so remain in the employ of the company shall continue to enjoy the benefits of the corporation's Profit Sharing Plan.'
>
> "X. That said Board in adopting the resolution set forth in Finding No. IX acted in good faith, exercised its sound discretion and was free of fraud or oppression."

The action was taken pursuant to the provision of the plan recited in the trial court's finding VI, as follows:

> "The words 'retirement date' mean the anniversary date nearest the sixty-fifth birthday of a member, provided, however, that if a Member is sixty-five years of age or over at the inception date of this Plan, then his retirement date shall be the second anniversary date thereafter. Anything herein stated to the contrary notwithstanding, the Board of Directors of the company shall have the right to request a Member to remain in the employ of the company after his normal retirement date in *extraordinary circumstances* and such Member shall continue to enjoy the benefits of this Plan." (Emphasis added.)

Appellants concede that Mr. Letzter was a regular full-time salaried employee at the inception of the Plan, but contend that his employment could have been extended at the time the board of directors purported or attempted so to do, only

if there were "extraordinary circumstances" to justify it. They contend there were none. Appellees have pointed to no specific evidence of extraordinary circumstances beyond the generality that the record "is replete with examples of the value to the company of the services of Letzter and Borinstein," nor have they discussed the meaning or effect of "in extraordinary circumstances," as those words are used in the extension provision of the Plan. Instead, appellees rely entirely on the argument that "what constitutes 'extraordinary circumstances' is a matter solely up to the Board of Directors. . . ." And further that "any such determination . . . can only be rejected if fraud is involved." Finally they conclude that "[w]hether their value to the company was an extraordinary circumstance . . . is a matter of lying solely in the discretion of the Board of Directors. . . ."

It must be noted here that the court made no finding, with respect to the existence or non-existence of extraordinary circumstances at the time of the extension or since that time. Neither has the court found or concluded whether the existence of such circumstances is essential to the board's right to request an employee to remain beyond retirement date, or what constitutes such circumstances, or the bounds (if any) of the board's discretion in the determination of unusual circumstances if such a determination is required.

It is apparent from the trial court's finding number X the court believed that Mr. Letzter was properly extended as a member of the plan if the Board of Directors, in requesting him to remain in Machinery's employ beyond the mandatory retirement age, "acted in good faith, exercised its sound discretion and was free of fraud or oppression." All of which could have been true (and appellants do not contend that it was not true) without the board having ever given a thought to whether there were any "extraordinary circumstances" to justify such action. Especially is that true if the court did not consider "in extraordinary circumstances" to be to limita-

tion on the power of the board to request a member of the Plan to remain in Machinery's employ after his normal retirement date. If, on the other hand, the finding that the board "exercised its sound discretion" implies that with respect to whether there were "extraordinary circumstances" sound discretion was exercised, appellees have been unable to point to any specific evidence which would have reasonably supported such an unstated finding by the board. Appellees do assert that "if extraordinary circumstances were required," the board could properly have found the great value of Letzter's services to be extraordinary circumstances. Appellees contend that what appellants point to as evidence proving that there were no extraordinary circumstances with respect to Letzter's employment is merely evidence of "no unusual circumstances in the operation of the business." To sustain that interpretation appellees quote verbatim the testimony of an unnamed witness who testified that after November 22, 1954, there was only one occasion "wherein the business of Machinery there were extraordinary circumstances as compared to prior periods." That was in 1959 "when we had this enormous overstock of very high price special grade steel," which "stemmed from the Steel Strike."

Q. "And that was—was that the occasion for the continuing of Mr. Tudor?"
A. "That's right."

If the trial court believed that the existence of extraordinary circumstances was essential to the board's right to continue the employment of a member beyond the mandatory retirement age, we are at a loss to understand how he found that the board exercised sound discretion in continuing Mr. Letzter. It seems more likely that he treated "in extraordinary circumstances" as having no limiting effect on the board's right. We hold, however, that these words must be given their usual and ordinary meaning and that whatever may have been the purpose of including them in

Article I, section 11 of the Plan, they must be given effect. What constitutes "extraordinary circumstances" in any given instance is within the *reasonable* discretion of the board. It is unreasonable, however, to treat the clearly ordinary as extraordinary. There is nothing unusual about an executive employee over sixty-five years of age being of value to his employer. That is quite ordinary.

## III.

In their brief appellees added some words to issues one and two, as those issues had been stated in appellants' brief. Appellees then disposed of issue three by reasoning that since one and two "must be answered in the affirmative, there has been a proper allocating of the accounts." Appellees have made no attempt to negate the logical implication that the converse is also true; that if issues one and two are answered in the negative, there has *not* been a proper allocation. We hold that our negative answer to questions one and two mandates, without further consideration, an affirmative answer to issue three. Accordingly we hold that there has been an improper allocation of funds to the accounts of defendants Borinstein and Letzter.

## IV.

Notwithstanding their agreement that the issues are the three we have discussed, both the parties have made many arguments which range far afield from those three. We have been particularly impressed by the appellees' repeated reference to the involvement of plaintiff Myron Feinberg in the management of Machinery,[3] in the establishment of the profit sharing plan, in the inclusion of Louis Borinstein as a member, and in the extension of Borinstein and Letzter as members

3. We consider it irrelevant, but perhaps interesting, that plaintiff Myron Feinberg, his brother, defendant Marcus Feinberg, their uncle, defendant Louis Borinstein, and non-relative Edwin Letzter are each the owners of 25% of the capital stock of Machinery. Myron Feinberg was active in the affairs of the company as a director until he failed reelection in January, 1965. One year prior to that the Board of Directors of Machinery had removed him as a Trustee of Plan's Trust Fund.

after they had reached mandatory retirement age. Also, their repeated references to the trial court's findings in Myron Feinberg's individually instituted stockholders' derivative suit which was decided against him by the same trial judge on the same day.

Conversely, appellants have laid great stress on the instant case being a class action (so found by the court in finding I) while the stockholders' derivative action in an individual action, said by appellants to be primarily concerned with an attack on excessive salaries.[4]

Neither party has cited any authority or even attempted to articulate any principle of law applicable to whether or not plaintiff Myron Feinberg's participation in any of the acts about which the plaintiffs as a class now complain has any effect on whether the class can now obtain relief or redress if such acts were harmful to them and are otherwise actionable. Nor do we think any such questions are before us on appeal. We cannot, however, avoid expressing puzzlement at the trial court's reason for including in finding IX (reciting the adoption of the resolution extending Borinstein and Letzter) the phrase, "with plaintiff Myron Feinberg as a member thereof and voting in favor." Regardless of what may be his participation's effect on his own interests, we fail to see how it affects the interests of other members of the plan any more than do the votes of the defendants who were then directors. His participation certainly can have no legitimating effect if the resolution is spurious without it.

The parties have also gone outside the agreed issues to discuss whether and to what extent a reallocation of trust funds will benefit whom; whether in event of reallocation Machinery would be entitled to a return of contributions; and incidental relief such as appointing

---

4. To the extent that a stockholders' derivative action may be a species of class action, the class is stockholders of the corporation, while the class here is members of an employees' profit sharing plan, few of which members are also stockholders. See Trial Rule 23.1.

a receiver; whether the defendants failed to perform their duties (and the effect thereof). These are issues never yet resolved by the trial court and on which this appeal has not prepared us to issue instructions.[5]

We regret that our decision here will not terminate this litigation.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

Hoffman, C. J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 276 N. E. 2d 606.

5. We note that the parties entered into a stipulation which included some detailed agreements as to procedure, the essence of which seems to be that evidence of specific relief to which plaintiffs might be entitled would not be offered unless and until the court ruled (or indicated that he would rule) that one or more of plaintiffs' claims is meritorious. No question relative to this stipulation has been presented to us and this comment implies no interpretation of its effect, if any, on the future course of this lawsuit. We mention it here only as some apparent indication of the posture in which this case reached this court and is now remanded.