WALLACE v. LANGSTON.

1. BONDS—WRITTEN INSTRUMENTS—PRINCIPAL AND AGENT.—One signing an instrument under seal, therein using apt words to bind himself, without having at the time an instrument of equal rank authorizing him to bind another for whom he acts, is personally liable on the instrument.

2. EVIDENCE—FRAUD—WRITTEN INSTRUMENTS.—Parol evidence is not admissible to explain the plain words of a written instrument, in absence of fraud.

Before ALDRICH, J., York, August, 1897. Affirmed. *Divided Court.*

Action by J. F. Wallace, I. D. Witherspoon, and C. E. Spencer, trustees, *v.* Wm. J. Langston, Samuel M. Grist, J. Andy Tate, William Dobson, and Horace E. Johnson, trustees. The Circuit decree is, omitting formal parts:

The defendants submitted in evidence a number of pamphlets, purporting to be "minutes" of the sessions of the associations above named, and as containing testimony or evidence supporting the position assumed by defendants, to wit: that they were a committee acting for and under the authority of said associations. The earliest session held by either of the associations, the minutes of which were submitted in evidence, began on September 28th, 1893, a full month lacking one day, after the committee had bought the property, accepted their deed therefor, and executed the bond and mortgage in suit. Defendants seem to rely upon "reports" as to the "school," the approval of the association of the acts of the "committee," and the fact that the association elected "trustees" of the "school." If the view of the defendants is correct, then their acts were "ratified," not directed, by the associations, so far as these minutes show. But I cannot discover any clear, explicit action on the part of the associations to purchase, as the property of the associations, the school property. It would seem that the advertisement of the "Baptist High School, Yorkville, S. C.," appearing on the last page of the "minutes" of the Moriah Association for 1893, and specially put in evidence, and marked, more clearly expresses the true status of affairs, to wit: that said school was "under the auspices," not ownership, of the association. Under the order of reference herein, the referee has taken down the testimony of witnesses upon several subjects, such as what was done and said by conferences, associations, and members of the Baptist denomination, prior to the purchase; what was said and done by the committee in negotiating the purchase; what was said and done by the committee, the individual members thereof, and Mr. C. E. Spencer, at the time the bond and mortgage were executed and delivered. Plaintiffs duly

objected to all such testimony, and the referee has very
properly noted these objections. He had no authority to
rule upon these objections, and they are properly before
this Court for consideration. It is very clear that what was
said and done in the said conferences and associations could
not be—unless in exceptional instances, of which there is
no evidence here—proven by a gentleman who was present
at such conferences or associations. The best evidence of
what was said and done in these meetings, if admissible in
evidence at all, was the minutes or records of these meet-
ings duly proven. These objections are sustained, because
the minutes of the meeting was the best evidence—indeed, the
only proper evidence—and these witnesses cannot be allowed
to give secondary testimony as to the actions of these meet-
ings, and that, too, without even an attempt to prove any fact
or facts which would even tend to make such testimony ad-
missible. I do not think that the evidence or testimony
detailing the negotiation for the purchase, and as to what
was said and done prior to and at the time of the execution
and delivery of the bond and mortgage, is competent or ad-
missible. These negotiations ended in contract, reduced to
writing and under seal, and these instruments contained
the contracts, and constituted the evidence thereof. "It is a
general rule of evidence, long since established and now
well settled, that parol testimony cannot be introduced to
vary, add to or alter a written instrument, which in itself is
plain and free from doubt. The parties themselves having
reduced their contract to writing, they are supposed to have
done so, in part, at least, with the view to exclude every-
thing else but the writing itself in determining their con-
tract, which writing must be interpreted by the Court ac-
cording to certain well-established rules not necessary to
be here considered. This rule, it will be observed, is di-
rected only against the admission of any other evidence of
the language employed by the parties in making the con-
tract than that which is furnished in the writing itself. 1
Green. Ev., sec. 277. It, therefore, does not prevent the

writing from being read in the light of surrounding circumstances, if need be, in order the more clearly to understand the intent and meaning of the parties. The writing, however, being the act and instrument of the parties finally and solemnly agreed upon, no other words than those found therein can be added to it or substituted in its stead by oral testimony. Nor can oral testimony of a previous colloquium, or of conversations or declaration at the time when completed or afterwards, be offered to explain it. On the contrary, the instrument must stand upon its own terms." *Railway Co.* v. *Seigler*, 24 S. C., 128. The ruling in the case of *Drake* v. *Steadman*, 46 S. C., 474, cited by defendants, does not even purport to vary or in any wise change the law. That was an action to set aside a mortgage, because fraudulent and void under the assignment law. The testimony introduced was relevant to those issues; but neither of these issues involved the salutary rule stated in *Railway Co.* v. *Seigler*, *supra*. Further on, in discussing the alleged trust, I will refer to this question, and cite authorities bearing thereon.

Defendants, in their answer, deny that as individuals they made the bond, or the payments thereon, above stated; but admit that, as trustees and agents of the four Baptist associations aforesaid, they executed said bond, having first made known their principals. They, in like manner, deny the making of the mortgage as individuals; but admit that they did so as trustees and agents of said associations. The answer alleges also that the deed, bond and mortgage are part and parcel of the same transaction, and that the deed of the plaintiff to them simply conveyed the legal title to defendants upon the uses and trusts named in said deed. The answer, so far as referred to, raises the real issue in this case. The counsel of defendant contends that the papers themselves, apart from the oral testimony, showed that they were executed as part and parcel of the same transaction—citing *Barrett* v. *Cochran*, 8 S. C., 49, and *Elliott* v. *Mackorell*, 19 S. C., 242. He next contends that the trusts are

created and declared in the deed of plaintiffs to defendants, and that the grantees are therein recognized as trustees of the associations; "that thus construed, the *burden* [?] on the trust estate was created by the very act calling the trust into existence, and the imposition must be deemed consistent with the purposes of the trust." The words referred to in the deed as creating the trust are: "To have and to hold * * said premises * * * unto the said Wm. J. Langston, * * * trustees, the survivors of them, their successors and assigns, forever, *in trust* for such board of trustees, and for such uses and trusts, as York, Chester, Union, and Moriah Baptist Associations, or a majority of them, may hereafter appoint, and designate and declare." This, to say the least, is a very peculiar trust, if it can be so considered. These defendants are to hold the property as "trustees," not for the "board of trustees," a board then and there existing; but for "such board" as the associations "may hereafter appoint, and designate and declare." This "board," or the parties for whom they were to hold the property, then, is the *cestui que trust*, and not the associations. Neither at the creation of the alleged trust nor now is the "board" *in esse*, and it never will be, unless the associations have the power to create it, and do create it, because it rests in the pleasure of the associations. Not only is the "board of trustees" a prospective and most uncertain body, but also the "uses and trusts" are likewise prospective and uncertain, depending upon the will, action and power of the associations. We have already discussed these associations individually, unincorporated bodies, and here we have four such bodies acting together. Under this view, defendants, as trustees of a possible and prospective board of trustees, are to hold this property "for such uses and trusts," as four separate associations unincorporated, each composed of an aggregation of unincorporated churches, each made up of congregations of individuals, "may hereafter appoint and designate and declare."

In the last analysis, and looking at the matter from a practical point of view, this so-called trust means this, that

the defendants bought the property for a school to be run in the interests of the Baptist denomination; that they intended it to be under the auspices of the four associations— that is, run with their sanction and under their guidance. Doubtless, as the testimony shows, these defendants confidently expected their "brethren" in the four associations to help them to pay for the property. If this were the purpose, the reason for appending the word "trustees" to the names of the defendants, is apparent and easily understood. But the cause of action is the bond and mortgage, not the deed of conveyance, and we will pass on and consider them. In their answer, "These defendants deny that as individuals that they, or any of them, ever executed the bond or obligations described in paragraph 1 of the complaint, or that as individuals they made any of the payments alleged to have been made in said paragraph; but these defendants admit that as trustees and agents of the four Baptist associations of York, Chester, Union and Moriah, they executed the said bond or obligation mentioned in said paragraph, having first made known their principals." The same allegations follow as to the mortgage. Somebody is *personally* bound for the money due to plaintiffs, and evidenced by the bond in suit. That is plainly apparent upon the face of the bond. It is hardly necessary to discuss, rather to cite, the law upon this issue prior to the well considered case of *Robertson* v. *Pope*, 1 Rich., 501. In this case Judge O'Neall, with characteristic vigor and clearness, considers it upon reason and authority, and as the results of that consideration, the case of *Flash* v. *Ross*, 2 Hill, 294; *Taylor* v. *McLean*, 1 McM., 352; and *Moore* v. *Cooper*, 1 Speer., 87, were overruled, and the law clearly enunciated. So far as I am aware, Judge O'Neall's decision has never been questioned; but, on the contrary, has been cited and followed in numerous decisions, from 1845 down to the present. *Flash* v. *Ross* (overruled) was an action on a promissory note, signed: Jas. L. Ross, for I. Inabneth Ross, held liable. *Taylor* v. *McLean* (overruled) was also an action on a prom-

issory note, signed: Danl. McLean for John McLean. The action was against John McLean, and on the authority of *Flash* v. *Ross*, plaintiff was nonsuited, the Court holding that it was the agent's personal note. *Moore* v. *Cooper* (overruled) was also an action on a promissory note, signed: "Loring Cooper, for L. S. Co." Held that it was in form Cooper's note; and that parol testimony was inadmissible to prove agency. It was overruled upon the ground that in promissory notes and other parol contracts, not under seal, proof of agent's intention to bind principal, and not himself, may be gathered from any part of the paper, and Judge Story and Chancellor Kent are cited (1 Rich., 503,) as authority. Judge O'Neall, in *Robertson* v. *Pope*, as the numerous quotations and the reasoning show, holds that in *sealed instruments*, the rule laid down in the overruled cases is proper and applicable; that in *sealed* instruments, the agent binds himself, and not his principal, unless he uses the name of his principal in the execution; whilst in parol contracts, it is sufficient if it appears anywhere in the contract that he acted as agent, and that he meant to bind his principal. The reason is apparent; in either case, he must show authority to sign the name of the alleged principal, and in the case of a sealed instrument, he must show authority under the hand and seal of the alleged principal. As supporting these views, see *Colgan* v. *Philips*, 7 Rich., 361; *Sullivan* v. *Susong*, 40 S. C., 163. In the case now under consideration, the bond and mortgage are not only under the hands and seals of the defendants, but also it does not appear in the contract that the alleged principals were bound, or intended to be bound. *Edings* v. *Brown*, 1 Rich., 255, had been decided four months, when *Robertson* v. *Pope* was decided in the Court of Errors. *Edings* v. *Brown* was an action against the agent for breach of warranty on a contract signed: "Catharine Brown (seal), per R. E. Brown, trustee." Principal was *feme-covert*, and the question was whether the agent was liable in an action on the deed itself, even if liable in some other form. Held liable on the deed.

See citation from Kent, 630, at page 256; also, Story on Agency; that agent is liable personally, (1) if the principal is not known; (2) if no responsible principal; (3) when he makes the undertaking in his own name; and (4) when he exceeds his authority.

It will be observed, that as to the third ground, the application of the rule is more rigid in the case of a sealed instrument than in an unsealed paper. In the former, he must use the principal's name in execution; in the latter, he need only show by the paper (conceding that he had authority), that he meant to bind his principal. See, also, *Bank* v. *Wray*, 4 Strob., 90. When it does not contradict the terms of the contract, the same being in writing, the agent would, of course, be excused, when it can be shown that the other party was willing to give the credit to the nominal or irresponsible principal. And the alleged agent "must so disclose his principal at the time of the contract as to enable the opposite party to have recourse to the principal, in case the agent had authority to bind him." 2 Kent, 631; *Waddell* v. *Mordecai*, 3 Hill, 26. The rule affirmed in *Edings* v. *Brown* (1 Rich., 255), is stated by the Circuit Judge (Evans, J.), with precision in the application to this case, when he instructed the jury that, "if one sign a note or indorse a bill, as agent, when he is not agent, he is personally liable, although he do so *bona fide*, and does no other act to deceive or mislead the person with whom he deals, except by the assumption of agency, when he is not agent." *Bank* v. *Wray*, 4 Strob., 90.

If the Baptist associations were incorporated, and endowed with the usual powers, they could do certain acts through agents appointed by vote, or other act sufficiently expressive of corporate will and intention, and would be bound by the act of the agent, within the scope of his authority; for example, they could, through such agent, transfer a promissory note. *Garvey* v. *Colcock*, 1 N. & McC., 232-3. They could not, however, bind themselves by so solemn a paper as a deed or mortgage, without giving to the agent a

paper of equal solemnity, duly executed under its corporate seal. *Miller* v. *Ford*, 4 Strob., 215–6. Undoubtedly, some-body is personally bound for payment of the money to plain-tiffs. *Sumner* v. *Williams*, 8 Mass., 5 Am. Decs., 92–4. "Had he made the sale as executor or as administrator, act-ing in *alieno jure*, any covenants he should have made would have bound him personally." Washburn on R. P., book 3, ch. 5, 672. To the same effect, see *O'Neall* v. *Abney*, 2 Bail., 318; Rover on Jud. Sales, sec. 458; and *Young* v. *Lorain*, 11 Ill., 52; Am. Dec., 473. In this connection we must bear in mind what a mortgage is, and what it is not. In the face of these radical changes in the nature and effect of a mortgage, made by statute, it is difficult to understand how a Court can now attribute to a mortgage qualities of which it has been deprived by legislative enactment, for it is essential to the idea of a mortgage being an *alienation* that it should be the *conveyance* of an *estate*, and that the statute expressly declares that it shall not be." *Simons* v. *Bryce*, 10 S. C., 369, affirmed in *Warren* v. *Raymond*, 17 S. C., 188. In the latter case it is said, that "under our law" a mortgage "is generally a security for a debt" * * * "A mortgage is the imposition of a lien on certain property therein mentioned, given to secure a contract; but it is some-thing independent of the contract itself, and is collateral thereto." *Aultman* v. *Rush*, 26 S. C., 526. The mortgage, in this instance, was given "to secure a contract," and that contract is evidenced by the bond—*Cleveland* v. *Cohrs*, 10 S. C., 225; and that contract, thus shown, is to pay a certain sum of money, at a stated time, with interest, etc. Who is to pay it? Defendants admit that for a trustee to apply money, then impressed with a trust, in part payment of land, and to give a mortgage for balance due, would be a breach of trust. *Mathews* v. *Heyward*, 2 S. C., 239. But such is not the case, however, when the trust is created by the deed executed contemporaneously with the mortgage. *Barrett* v. *Cochran*, 8 S. C., 49; *Elliott* v. *Mackorell*, 19 S. C., 238. This position, if correct, is clearly at variance

with the plea of agency, because the latter implies an agency for an existing principal; and even if, for the sake of argument, we regard the four associations as the principals of defendants, there is no evidence, as we have seen, showing that said principals authorized defendants to create the trust in question, or to encumber it. In *McDowall* v. *Reed*, 28 S. C., 468–9, it is said: The general rule, undoubtedly, is, as stated by Judge Story: "In general, a trustee is only suable in equity in regard to any matter touching the trust. But if he chooses to bind himself by a personal covenant in any such matter, he will be liable at law for a breach thereof, although he may, in the instrument containing the covenant, describe himself as covenanting as trustee; for the covenant is still operative as a personal covenant, and the superadded words are but a *descriptio personae*." 2 Story Eq., sec. 975; *Duval* v. *Craig*, 2 Wheat., 45; *Tobin* v. *Addison*, 2 Strob., 4; *Barrett* v. *Cochran*, 11 S. C., 34. The bond in *McDowell* v. *Reed*, was: "Know * * * that we, J. P. Reed, trustee, * * * are held and firmly bound * * * to which payment, well and truly to be made and done, we bind ourselves and each and every of our heirs, executors, and administrators, jointly and severally, firmly by these presents." The bond in the case at bar reads: We, Wm. J. Langston * * * and Horace E. Johnson, trustees, are held and firmly bound unto * * * to which payment, well and truly to be made and done, we do bind ourselves and each and every one of our heirs, executors, and administrators, jointly and severally, firmly by these presents. In *McDowall* v. *Reed*, others had signed with Reed (see page 467); but he signed, "J. P. Reed, trustee (L. S.)." In the case at bar the defendants do not even add the word "trustee" to their signatures to either the bond or the mortgage, and much less do they sign "*as trustees.*" *Moss* v. *Johnson*, 36 S. C., 553. In *McDowall* v. *Reed* (p. 467), it is noted that "the bond and mortgage were both signed by J. P. Reed, trustee, without stating for whom." This is true of the bond and mortgage under consideration.

The result of the authorities cited may be thus stated:. 1. In every cause of action upon a written instrument, whether under seal or not, if the plaintiff would reach the alleged principal, he must prove, outside of the writing,. that the supposed agent had the authority to make or execute the writing, whatever its nature; and so, if the action be against the agent, charging him as personally liable, the alleged agent can only escape liability by showing (a) that his alleged principal is *effectually* bound by the instrument executed by him, and (b) that the writing itself, which he may not contradict, alter, vary or explain (unless ambiguous), purports to bind the alleged principal, and not himself. 2. In every case, if the agent was without authority, he is bound *personally*, even though he formally signed the name of his alleged principal. 3. In every case the alleged agent's intention to bind the principal must appear *in the writing;* if not, the principal is not bound. The principal cannot be reached by the holder of the papers. This is absolutely so in a court of law. If there be an exception to the rule, it can only be in that class of cases where, from the principal having taken the benefit, he may be followed in a court of equity; and in that class of cases, his being held liable in a court of equity in no way relieves the agent from liability upon the paper itself. 4. In deeds and mortgages, for obvious reasons, the intention to bind some one else must appear in the manner of execution; whilst in less solemnly executed instruments, it is sufficient if it can be made to appear from the whole paper. *Webster* v. *Brown*, 2 S. C., 430; *Dewalt* v. *Kinard*, 19 S. C., 292; *Johnson* v. *Johnson*, 27 S. C., 316; *Moss* v. *Johnson*, 36 S. C., 553–4; *Henshall* v. *Roberts*, 5 East., 150.

In the most favorable view of this obligation, the defendants cannot justly, much less legally, claim immunity from liability on this bond. If others were to pay, or to assist them in paying, the duty was still theirs, under the very terms of their bond and their covenant therein, to cause the purchase money "to be paid," and this they have not

done.　Defendants rely upon that portion of the testimony submitted by them tending to prove that they, the defendants, signed the bond upon the assurance of Mr. C. E. Spencer, one of the grantors, that they were not personally bound thereby, and that defendants assumed no personal liabilities in entering into the contract evidenced by the papers.　This is a plea of estoppel by conduct.

All of the parties to this action are men of the highest character, and no one of them would even be suspected of telling a deliberate falsehood. · Evidently some of the parties misunderstood each other, or, during the lapse of time, their memories have proven treacherous.　Plaintiffs were trustees, and as such sold to defendants, and as such took their bond and mortgage.　They could only act in selling, &c., within the scope of their authority.　Defendants knew the authority of plaintiffs to sell, for they refer to it in the bond and mortgage.　Now, it cannot be seriously considered that Mr. Spencer, an able and learned lawyer, would entertain the idea that he, as trustee, had the authority to make the "assurances" attributed to him by some of the witnesses.　Nor would he, as a lawyer, have told the defendants that their bond and mortgage did not render them personally liable.　The defendants, not being lawyers, and, as the evidence indicates, seem to suppose, as so many persons are accustomed to assert, that the mere adding of the words "trustee" or "agent" to a name, either in the body of a paper or to a signature, has the effect of preserving them from and against personal liability—words talismanic in their behalf.　The act claimed as an estoppel is the statement alleged to have been made by Mr. Spencer that the bond and mortgage would not bind the defendants personally.　Both parties saw these papers, and each could construe them; now an opinion of that nature is not an act, and cannot support the position taken by defendants.　Matters of opinion and law are not elements of estoppel by conduct.　7 Am. & Eng. Enc. of L., p. 14.　The cases of *Bull* v. *Rowe*, 13 S. C., 370, and *Douglas* v. *Craig*, *Id.*, 371, do

not change this rule. I do not think that this plea can be sustained either by the testimony or under the law. The testimony was not admissible, and the plea is without support.

The answer alleges that at the date of the commencement of this action, the four associations had duly elected and appointed a board of trustees, "and the said property, at the date of the breach of the conditions of the bond and mortgage sought to be foreclosed, and at the date of the commencement of this action, had been transferred from and vested in the board of trustees of the said Baptist High School, composed of the following persons," naming them. The answer alleges that the said parties were and are in charge of the mortgaged premises, for the uses and trusts designated, appointed, and declared by the said associations, and are necessary and proper parties to this action. As matters of fact, the title to the mortgaged premises is in the defendants now just as they received it from plaintiffs. They have not conveyed it to the alleged board of trustees nor to any one else. The parties named as constituting the trustees appointed by the associations were never, so far as I can learn from the testimony, authorized to have the mortgaged premises transferred to them. These parties, as I understand the testimony, especially the printed minutes of the sessions of the associations, were appointed trustees to conduct and manage a school upon the mortgaged premises. The mere management and control of a school did not involve the title to the property. These parties are not in possession of the premises, and I can see no reason for making them parties to this action.

The defendants further contend that the real parties in interest are the board of trustees whose names are set out by the defendants in their answer, cited above, and the four associations that appointed or elected them; that the statute of uses executed the trust, so far as the defendants are concerned, instantly, upon the establishment of a high school by the associations, and the appointment by them of a board

10—52

of trustees. As we have seen, by the evidence, the board of trustees just alluded to are not, and were not, appointed as trustees to take and hold the title to the realty; they were appointed to manage and conduct the school. The defendants, according to their contention, held the property in trust for "such board of trustees" as the associations might designate. The associations were to act, determine the character of the board, and appoint and elect such board. This board was to take and hold the title to real estate. The defendants were to convey and pass that title; surely, in a grave and serious matter, such as conveying property, necessitating the execution of solemn interests, the action of the associations should be clear and unequivocal, and authoritatively announced and duly shown. Again, defendants were to convey the property to "such board" and "for such uses and trusts" as the associations "*may hereafter* appoint and designate and declare." These "uses and trusts" were to appear in the conveyance to the "board;" and, so far as I can see, they have never been appointed, designated, and declared by the associations. In a general way, it was understood and assumed by all the parties that the property was to be used as the location of a Baptist High School; but to carry that purpose into effect, as well as to follow the words of the trust, this could be only done by the associations in a legal and formal manner, and they have not done so. The defendants still hold the title to the property, and still have a most important duty to perform in reference thereto, to wit: to convey it, and to convey it "for such uses and trusts" as the associations "may" hereafter appoint, &c. The statute of uses, therefore, has not executed the use; for it only executes the use when nothing further remains to be done. *Huckabee* v. *Newton*, 23 S. C., 295; *Blount* v. *Walker*, 31 S. C., 26; *Ayer* v. *Rilter*, 29 S. C., 138.

I have given this case full consideration. It was unusually well presented by learned counsel, to whose research and statements I am debtor. The parties are all men of

high character, and the purposes actuating them were of a high and noble order, to wit: the advancement of the education of the youth of their section. The plaintiffs, according to Mr. Langston's report or statement, as stated in the report of J. S. Croxton, page 8, minutes of Moriah Association, sold the property for one-third its value entirely upon credit, and upon easy terms. The defendants, as zealous churchmen, and as public-spirited citizens, initiated the idea of the purchase of the property and of the school. They went forward and acted as we have seen, and have been disappointed in their hopes and expectations. While it is the duty of the Court to declare the law and enforce it, I trust that it is proper for me to express the hope that the plans of the defendants will yet materialize; that they will yet receive the aid expected; that the historic King's Mountain School, under their "auspices," will revive, and that the future will equal, if not excel, its past. I conclude that the plaintiffs are entitled to a personal judgment against the defendant upon the bond; for a decree of foreclosure and sale; the costs and disbursements of this action, and the attorney's commissions of ten per cent., as demanded in the complaint.

From this decree the defendants appeal on the following exceptions:

1. Because his Honor, the Circuit Judge, erred in holding the defendants herein personally liable for the debt evidenced by the bond, when the facts as stated in the complaint are not sufficient to constitute a cause of action for personal judgment against said defendants.

2. Because his Honor, the Circuit Judge, erred in finding as matter of fact that the school was under the "auspices," not ownership, of the association; whereas he should have found the said school and property was under the equitable ownership, management and control of the association.

3. Because his Honor, the Circuit Judge, erred in holding as incompetent and inadmissible, defendants' testimony detailing the negotiations for the purchase of said property,

and as to what was said and done prior to and at the time of the execution and delivery of the bond and mortgage.

4. Because his Honor, the Circuit Judge, erred in finding as matter of fact that the board of trustees, or the parties for whom the defendants were to hold the property as trustees, is not now *in esse;* whereas he should have found such board to be *in esse* and duly elected by the association, and existing at and prior to the issuing of the summons herein.

5. Because his Honor, the Circuit Judge, erred in finding as matter of fact, that "doubtless the defendants confidently expected their 'brethren' in the four associations to help them pay for the property;" when the testimony clearly shows that the defendants purchased the property for the four associations instead of for themselves as individuals.

6. Because his Honor, the Circuit Judge, erred in finding as matter of law, "somebody is personally bound for the money due to plaintiffs and evidenced by the bond in suit."

7. Because his Honor, the Circuit Judge, erred in finding as matter of law and fact that "it does not appear in the contract that the alleged principals were bound or intended to be bound."

8. Because his Honor, the Circuit Judge, erred in finding as matter of fact that "there is no evidence showing that the four associatiuns authorized defendants to create the trust in question or to incumber it."

9. Because his Honor, the Circuit Judge, erred in holding as matter of law that the alleged agent can only escape liability by showing (a) * * * and (b) "that the writing itself, which he may not contradict, alter, vary or explain (unless ambiguous), purports to bind the alleged principal and not himself."

10. Because his Honor, the Circuit Judge, erred in holding that in deeds and mortgages, the intention to bind some one else must appear in the manner of execution.

11. Because his Honor, the Circuit Judge, erred in finding as a matter of fact that Mr. Spencer, an able and learned lawyer, would not entertain the idea that he, as trustee, had

the authority to make the "assurances" attributed to him by some of the witnesses; nor would he, as a lawyer, have told the defendants that their bond and mortgage did not render them personally liable, when, as matter of fact, the preponderance of the testimony shows that defendants were · led to believe by the words and conduct of Mr. Spencer that their execution of the bond and mortgage in form and manner as set out, would not render them personally liable.

12. Because his Honor, the Circuit Judge, erred in holding as matter of law that the words and conduct of Mr. Spencer during the conduct of the negotiations for purchase of the property, and at the time of the execution of the deed, bond, and mortgage herein, did not estop plaintiffs from holding defendants personally liable in an action at law on the bond.

13. Because his Honor, the Circuit Judge, erred in finding the words, conduct and assurance of Mr. Spencer to defendants during the negotiations for the property, and at the time of the execution of the deed, bond, and mortgage herein, were matters of opinion and law, and were, therefore, not elements of estoppel by conduct; whereas, his Honor should have found that said acts, conduct, and assurances of Mr. Spencer were matters of fact, and operated as estoppel by conduct and declaration.

14. Because his Honor, the Circuit Judge, erred in holding that the property described in the complaint and covered by the deed and mortgage, was not under the control and in the possession of the board of trustees elected by the four associations; and that said trustees, for whom, by the terms of the deed creating the trust, the defendants held the property, were not necessary parties to the determination of this action.

15. Because his Honor, the Circuit Judge, erred in holding as matter of fact and law, that the title to the mortgaged premises is in the defendants now just as they received it from the plaintiffs.

16. Because his Honor, the Circuit Judge, erred in hold-

ing as matter of fact, that the board of trustees appointed
or elected by the four associations, were not appointed as
trustees to take and hold the title to the realty; when he
should have held as matter of fact and law, that under the
terms of the deed creating the trust upon the election or
appointment of the said board of trustees, the statute of
uses executed the use in them.

17. Because his Honor, the Circuit Judge, erred in find-
ing as matter of fact, that according to defendant Langston's
report or statement, as stated in the report of J. S. Croxton's,
page 8, minutes of Moriah Association, that plaintiffs sold
defendants' property for one-third its *value*, when, as matter
of fact, Mr. Langston's statement, as appears in said report,
was that the property could be bought for less than one-
third of its original *cost*.

18. Because his Honor, the Circuit Judge, erred in decid-
ing as matter of law, that the defendants herein, under the
evidence, are personally bound by the execution of the bond
and mortgage herein, and for giving judgment against them
personally for the debt evidenced by the bond.

19. Because his Honor, the Circuit Judge, erred in not
finding that the plaintiffs were stopped from claiming per-
sonal judgment against the defendants, said defendants hav-
ing explained to the plaintiffs, or one of them acting for
all, the exact nature of the capacity in which they were
contracting, and for whom and by and under what authority
they were contracting.

*Messrs. W. B. deLoach* and *Glenn & McFadden*, for ap-
pellants, cite: *Acceptance by principal of the acts of agent
binds principal:* 19 S. C., 238; 8 S. C., 49; 11 S. C., 35.
*New trustees arc necessary parties:* 8 S. C., 48.

*Mr. Geo. W. Hart,* contra, cites: *Defendants are person-
ally liable on the bond:* 1 Rich., 501, 255; 3 Hill, 26; 4
Strob., 90, 215; 5 Am. Dec., 92; 2 Bail., 318; 52 Am. Dec.,
473; 10 S. C., 369; 17 S. C., 188; 26 S. C., 526; 10 S. C.,
225; 2 S. C., 430; 19 S. C., 292; 27 S. C., 316; 36 S. C.,

553; 5 East., 150; 28 S. C., 467; 23 S. C., 295; 31 S. C., 26; 29 S. C., 138; 46 S. C., 392.

March 25, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.    It appears that, on the 29th of August, 1893, the plaintiffs, holding the legal title to certain real estate, known as the King's Mountain Military School property, in trust for certain beneficial owners of said property, sold and conveyed the same to the defendants, as named in the title, for the sum of $6,000, taking the bond and mortgage of the defendants to secure the payment of the purchase money.    The deed conveying the property is in the names of Jos. F. Wallace, I. D. Witherspoon, and C. E. Spencer, "Trustees for the beneficial owners" of said property, "according to (their) several interests, as set forth in the deed of W. Brown Wylie, clerk, to said trustees," more particularly described by reference to the record thereof.    The conveyance is made to "W. J. Langston, Samuel M. Grist, J. Andy Tate, William Dobson, and Horace E. Johnson, trustees;" and the habendum clause is as follows: "unto the said W. J. Langston, Samuel M. Grist, J. Andy Tate, William Dobson, and Horace E. Johnson, trustees, the survivors of them, their successors and assigns, forever, in trust for such board of trustees, and for such uses and trusts as York, Chester, Union, and Moriah Baptist Associations, or a majority of them, may hereafter appoint and designate and declare."    The bond is in the names of the several defendants, "trustees," but it is signed by defendants, without appending the word "trustee" to their several names, and the same is true of the mortgage. Upon breach of the conditions of the bond and mortgage this action was commenced, on the 23d of May, 1896, and in their complaint the plaintiffs demand judgment against the defendants personally, as well as for a sale of the mortgaged premises.

The defendants, in their answer, while interposing no objection to a sale of the mortgaged premises and the ap-

plication of the proceeds thereof to the balance due on the bond, and while admitting that they executed the bond and mortgage, deny any personal liability thereon, alleging that they were acting merely as trustees or agents of the Baptist Associations of York, Chester, Union, and Moriah, and so known to be by the plaintiffs, at the time these papers were executed.

A referee was appointed to take all testimony offered, noting any objections, and report the same to the Court. This report was made, and all of the testimony taken, together with the objections noted, appears in the "Case." The cause was heard by his Honor, Judge Aldrich, who rendered his decree, from which defendants appeal. The decree of the Circuit Judge, together with the exceptions thereto, will be embodied in the report of the case.

The real question in the case is, whether there was error in adjudging that the defendants were personally liable for the debt represented by the bond, and in authorizing plaintiffs to issue execution against defendants for any balance that may remain unpaid, after applying the proceeds of the sale to the mortgage debt. In 1 Am. & Eng. Enc. of Law, 2d edit., p. 1035, it is said: "The intent of the parties, as legally evidenced by the terms of the contract itself, is always the governing consideration in determining who is bound by the contract; hence a contract by an agent should be in the name of his principal, so as to show beyond question that it is the principal who contracts, and not the agent." And on the next page of that valuable work it is said: "The general rule above stated is most strictly applied to sealed instruments. It is essential to their proper execution that they be in the name of the principal and under his seal, and purport to be his deed." And again, on page 1038 of the same work, it is said: "An agent who executes a sealed instrument in his own name, using apt words to charge himself, fails to bind his principal, and is personally liable on the contract, though he adds to his name descriptive words indicating that he is the agent

of a named principal; and the rule is applicable whether such description occurs in the body of the instrument, in the signature, or in both." These doctrines are supported by numerous authorities cited in the foot-notes. To the same effect are the authorities in our own State. In *McDowall* v. *Reed*, 28 S. C., 466, the bond was in the name of "J. P. Reed, trustee," and the condition was, that "if the above bound John P. Reed, trustee," shall pay, &c., and it was signed "J. P. Reed, trustee (L. S.)," and the Court held Reed personally liable. In that case, Mr. Justice McGowan, in delivering the opinion of the Court, quotes, with approval, the following language of Judge Story: "In general, a trustee is only suable in equity in regard to any matter touching the trust. But if he chooses to bind himself by a personal covenant in any such matter, he will be liable at law for a breach thereof, although he may, in the instrument containing the covenant, describe himself as covenanting as trustee; for the covenant is still operative as a personal covenant, and the superadded words are but a *descriptio personæ.*" That case was recognized and followed in *Moss* v. *Johnson*, 36 S. C., 551. See, also, the case of *Edings* v. *Brown*, 1 Rich., 255, which was an action for the breach of a covenant contained in a bill of sale, signed "Catherine Brown (L. S.), per R. E. Brown, trustee." It being admitted that Catherine Brown was a *feme covert*, and incapable, under the law as it then stood, of contracting, R. E. Brown was held personally liable. The present case is much stronger than either of the cases above cited, for in those cases the persons held personally liable signed the written instruments, with the word "trustee" appended to their names, while here the defendants signed both the bond and mortgage in their own names, without any such appendage; and there is nothing in the body of either the bond or mortgage which even tends to show that they were acting otherwise than in their individual capacity, for the addition of the word "trustees," not the words "as trustees," amounts to nothing more than mere *descriptio personæ*

(*Barrett* v. *Cochran*, 11 S. C., at page 35). Even if we refer to the terms of the deed, as it is permissible to do, it being a part of the same transaction, we find nothing to warrant the inference that these defendants, in signing the bond and mortgage, were contracting for others and not for themselves. The deed only shows that the property was conveyed to the defendants, "in trust for such board of trustees, and for such uses and trusts as York, Chester, Union, and Moriah Baptist Associations, or a majority of them, *may hereafter* appoint and designate and declare." It cannot be supposed that the defendants, in signing the bond and mortgage, were acting for some unknown body of persons, who had not then, and, as the Circuit Judge finds, have not since, been appointed or designated, and who, so far as appears, will not likely ever be appointed or designated, inasmuch as the very laudable enterprise for which the property was purchased seems, unfortunately, to have failed. The result, then, is, that these defendants, having executed the bond and mortgage in a manner which would render them personally liable, they must be so held, unless the parol evidence offered is admissible, and is sufficient to show that the defendants did not intend to assume, and did not as matter of law assume, any personal liability.

We agree with the Circuit Judge that the parol evidence offered was inadmissible, and his conclusion being supported by the authorities cited, we scarcely deem it necessary to add anything to what he has said. The only purpose of the parol evidence, was to show that a contract under seal, executed by the defendants in such a manner as would render them personally liable to perform the same, was not intended to bind them personally, but was intended to bind some one else—who, it is difficult to conjecture. The Baptist associations above named could not have been the parties intended to be bound, for the undisputed evidence is that neither those associations nor the churches composing them were corporate bodies, capable of contracting or being contracted with. It could not have

been intended to bind the board of trustees referred to in the deed, for they had not then been appointed. So that it is impossible for us to conceive who else could have been intended to be bound. Indeed, even if the parol evidence offered could be regarded as competent, we do not see how it could relieve the defendants from personal liability. Surely, it is not to be supposed that the plaintiffs would have parted with their property as they did, without some consideration—without some *legal* assurance that the purchase money agreed upon would be paid; and unless defendants are held to the liability which they unquestionably assumed when they signed the bond, we do not see to whom the plaintiffs could look for the payment of the purchase money. The impression left upon our minds by a careful study of the testimony is, that all parties honestly believed, at the time the purchase of the property was effected, that the purchase money would be paid by voluntary contributions from the members of the religious denomination, for whose interests the defendants were acting; and so confident were they in that belief, that they had no idea that the defendants would, in fact, incur any personal risk by signing the bond; but we cannot believe that any of the parties supposed, at the time, that the plaintiffs were parting with their property without any *legal* security for the payment of the purchase money. Under this view, the apparent discrepancy between the testimony of Mr. Spencer and the testimony of the defendants, may be explained without the slightest imputation upon the credibility of any of the witnesses, all of whom are conceded to be persons of unquestionable credibility. We must conclude, therefore, that, in the absence of any allegation or proof of fraud, which is distinctly disclaimed, the parol evidence offered was inadmissible; and even if admissible, it is insufficient to relieve the defendants from personal liability on the bond.

The judgment of this Court, I think, should be that the judgment of the Circuit Court be affirmed; but as the Court

is equally divided, the judgment of the Circuit Court must stand affirmed, under the Constitution.

JUSTICES POPE and GARY *dissent.*