## De Coudres, Administratrix, v. The Union Trust Company of Indianapolis.

[No. 3,094.   Filed October 2, 1900.]

EXECUTORS AND ADMINISTRATORS.—*Execution of Mortgage.—Personal Liability.*—A will gave the executor power to mortgage decedent's real estate to pay debts. The executor mortgaged the real estate without order of court and afterward reported the execution of the mortgage to the proper court and the same was approved. The mortgage was given to secure the payment of certain promissory notes executed by the executor as such. The mortgage referred to the power given by the will, and contained a personal covenant on the part of mortgagor to pay the sum secured. The proceeds derived therefrom were applied to the payment of the decedent's debts and the discharge of liens upon the real estate mortgaged. Default was made in the payment of the notes and the mortgage was foreclosed and the land sold for a sum less than the amount of the debt. *Held*, that the executor was personally liable for the deficiency. *pp. 272-278.*

De Coudres, Adm., *v.* Union Trust Co.

EXECUTORS AND ADMINISTRATORS.—*Mortgages.*—*Personal Liability.*—
*Interpretation by Parties.*—Where a mortgagee foreclosed a mort-
gage executed by an executor upon his decedent's estate, the act of
foreclosure did not affirm the proposition that the debt was the
debt of the decedent's estate and not that of the mortgagor so as to
bind the mortgagee and prevent him from proceeding against the
mortgagor personally for a deficiency in the payment of the debt
by the sale of the mortgaged premises.  *pp. 278, 279.*

From the St. Joseph Circuit Court.  *Affirmed.*

*A. L. Brick, F. Dunnahoo* and *S. Parker,* for appellant.
*A. Anderson, J. Du Shane* and *W. G. Crabill,* for appel-
lee.

COMSTOCK, J.—David W. Reece died testate April 18,
1889.  Louis De Coudres, as executor, was given power by
the will to sell or mortgage the decedent's real estate to pay
debts.  For this purpose he sold one tract and mortgaged
another without the action of the court, but reported the
sale in the one case and the execution of the mortgage ·
(not of the notes) in the other, to the proper court, and both
were confirmed.  The proceeds derived from the sale and the
mortgage were applied to the payment of debts of the testa-
tor and the discharge of liens upon the real estate mort-
gaged.  The mortgage was given to secure the payment of
the notes.  The mortgage and notes were made by the ex-
ecutor as such.  The mortgage referred to the power given
by the will, and contained a personal covenant to pay,
its language being as follows: "And the mortgagors ex-
pressly agree to pay the sum of money above named without
relief from valuation laws."  It contained the following
further provision: "And it is further expressly agreed that
until all of said notes are paid said mortgagor will keep
all local taxes · and charges against said premises paid as
the same become due, and, failing to do so, the said mort-
gagee may pay such taxes, and the amount so paid, with°
eight per cent. interest thereon, shall be a part of the debt
secured by this mortgage."

Louis De Coudres died in 1895, and his widow, Sarah De Coudres, was appointed administratrix of his estate.

Default having been made in payment of the notes, the appellee brought a suit in the St. Joseph Circuit Court against the heirs and devisees of David W. Reece to foreclose the mortgage, and recovered judgment of foreclosure and an order for sale of the land in question, but no personal judgment or decree against the estate of David W. Reece, and the land was sold under the decree of foreclosure, and bid in at sale by the appellee for less than the amount of the debt, there being a deficiency of $2,172.06; and the appellee then filed this claim against the estate of Louis De Coudres, claiming that by the execution of the notes and mortgage mentioned Mr. De Coudres became personally liable for the payment thereof.

The claim was transferred to the issue docket, and trial had, and the St. Joseph Circuit Court found that the unpaid balance of the mortgage indebtedness was $2,172.06, and that the estate of Louis De Coudres was liable for that sum, and rendered judgment for the same against appellant. From this judgment appellant has taken this appeal, and the only question to be decided by this court is as to whether or not, by the execution of the notes and mortgage aforesaid, the executor became personally liable for the payment of the debt.

The question before us has been settled, in our opinion, by the decisions of our Supreme Court.

In *Cornthwaite* v. *First Nat. Bank*, 57 Ind. 268, Cornthwaite was sued on a promissory note made by him and others, and in his answer it was stated, in substance, that the note sued on was given in renewal of a note given by the intestate; that the defendant, having been appointed and qualified as administrator, signed the note in that capacity, and for no other consideration; that he had no individual interest in the transaction, but that the note was given by

him as an administrator for the purpose of binding the estate of the intestate, and that it was so understood by all of the parties liable thereon. A demurrer was sustained to this answer, and it was held by the Supreme Court that Cornthwaite could not bind the estate of the decedent, but bound himself as principal.

In the case of *Botts* v. *Barr, Adm.,* 95 Ind. 243, the same rule is applied. This was an action which was brought against Barr, who was administrator, and it was alleged in the first paragraph of complaint that at the time of the death of the intestate there were sawlogs in the plaintiff's log yard, and afterwards the defendant, Barr, agreed with the plaintiff to pay a certain amount of money for sawing the same; that the plaintiff sawed the lumber for the defendant, and that the debt was due and unpaid. It is said by the court: "The cause of action here stated is not within the statute, §2310 R. S. 1881, because it is not 'for the recovery of any claim against the decedent', and it is not within the first clause of §4904 R. S. 1881, because the agreement stated is the original agreement of the defendant. upon a sufficient consideration. 'The contracts of an executor or administrator cannot be regarded as in any sense the contracts of the decedent. They are necessarily the personal contracts of the executor or administrator, and he must be held personally liable therefor, when he does not stipulate for exemption from such liability.' " The same rule was applied to the second paragraph of the complaint.

In the case of *Long* v. *Rodman,* 58 Ind. 58, in speaking of the contracts of executors and administrators, the court says: "The contracts of an executor or administrator cannot be regarded as in any sense the contracts of the decedent. They are necessarily the personal contracts of the executor or administrator, and he must be held personally liable therefor, when he does not stipulate for exemption from such liability."

The case of *Carter* v. *Thomas,* 3 Ind. 213, was an action of assumpsit brought against one Chancey Carter, in his

individual capacity, as acceptor of an order drawn on him by one McKeen. The acceptance sued on was as follows: "Accepted, to be paid when funds are received for the estate. C. Carter, Administrator." The evidence in the case showed that funds to the amount of $300 belonging to the estate had, subsequently to the acceptance, come into the hands of said Carter, and that in August, 1850, payment of the acceptance was demanded of him and refused; that Carter had resigned as administrator before the commencement of the suit, and that administrators *de bonis non* had been appointed; and the court found for the plaintiff in the sum of $128. The Supreme Court affirmed the judgment, saying: "It seems that 'if an executor or administrator promises, in writing, that in consideration of having assets, he will pay a particular debt of the testator or intestate, he may be sued on his promise in his individual capacity, and the judgment against him will be *de bonis propriis.*'"

In *Holderbaugh* v. *Turpin,* 75 Ind. 84, 39 Am. Rep. 124, which was a suit brought against Holderbaugh on an agreement to submit certain matters to arbitration, and that each party should, under certain conditions, pay one-half of the costs, the court say: "The mere fact that the matters submitted to arbitration grew out of an action prosecuted by the appellant as administrator does not warrant the inference, as against the positive allegations of the complaint, that he bound himself only in the capacity of administrator." It is further said on page 87 in the same case: " 'The whole case shows that the object of the plaintiff was to charge the estate of the deceased, by obtaining a judgment against the administrators *de bonis intestati.* The promise of administrators, on a consideration originating subsequently to their intestate's death, cannot sustain such an action.' * * * The undertaking of appellant was upon a consideration which accrued subsequently to the death of the intestate, and was to do a thing which the intestate's estate was not bound to do. It is impossible, in view of the authorities

cited and the character of the undertaking itself, to regard it otherwise than as the promisor's original contract."

*Mills* v. *Kuykendall,* 2 Blackf. 47, was an action of assumpsit by the appellee against Mills and Harness, as administrators, on a written agreement to pay money out of an estate. The question was whether the estate could be held on a promise made by the administrators. The court say, among other things, speaking of this action of assumpsit, that "The promise of administrators on a consideration originating subsequently to their intestate's death, cannot sustain such an action." And proceeding further, say: "The fatal objection to the count is that the plaintiff in his suit goes altogether against the administrators in their representative character—against the estate of the intestate, when, by his own showing, that estate has nothing to do with his cause of action, and can in no way be affected by it."

While the will in the case at bar gave authority to sell or to mortgage the real estate, it did not give authority to execute the promissory notes. The execution of the notes was not essential to the execution of the mortgage; it was not a necessary incident thereto; neither the express promise of the mortgagor to pay the mortgage, nor the execution of the notes, was necessary. By the terms of the mortgage, the mortgagor agreed to warrant the title to the land, and promised to pay taxes and attorney fees. By these promises, which are free from ambiguity and not to be explained by extrinsic evidence, the mortgagor was made personally liable. The rule is thus stated in Jones on Conv. §831: "A person executing a conveyance in a representative capacity such as an executor, guardian, or trustee, with the covenants for title usual in other deeds is personally bound by them though he is under no obligation to make any of them and had no authority to bind the estate he represented by such covenants." See, also, *Sumner* v. *Williams,* 8 Mass. 162; *Barnett* v. *Hughey,* 54 Ark. 195, 15 S. W. 464; *Mitchell* v. *Hazen,* 4 Conn. 495, 10 Am. Dec. 169; *Whiting* v.

*Dewey,* 15 Pick. 428; Thornton. & Blackl. on Adm., pp. 142, 143, 144; 1 Randolph on Com. Paper, 134; Williams on Ex. (6th Am. ed.) 186; 1 Parsons on Bills & Notes, p. 161.

Counsel for appellant refer to the case of *Neptune* v. *Paxon,* 15 Ind. App. 284; but that was a case where certain stock belonging or supposed to belong to a bank was put in the name of Tyler to hold as trustee for the bank. The stock belonged to the bank and the bank received all dividends thereon. For some undisclosed reason, the trustee gave his note to the bank for the face of the stock, signing it "W. M. Tyler, Trustee for the Bank." From all that appears in the case, the note was entirely for the benefit of the bank, which was in fact not only the payee of the note but also the party ultimately liable as maker. The court in that case say that a person signing such a contract "is the principal, unless it clearly appears that he is simply signing for another whose identity is unmistakable." But in the case in question there was not any other person for whom De Coudres could act. He had no principal. He could not act as agent for the decedent, nor did he, nor could he act for the heirs, nor could he act for or bind any estate in giving the notes sued on. He clearly comes within the rule that "the person signing the obligation is the principal, unless it clearly appears that he is simply signing for another" who can be identified.

Counsel cite *Falk* v. *Moebs,* 127 U. S. 597, 8 Sup. Ct. 1319, 32 L. ed. 266, which was a case which the court say was unambiguous. It was a case where there was a principal, who could be, and, in fact, was, identified by the signature to the note sued on. This is a well considered case; many authorities are referred to; and in .every case where an agent signing his name to a contract was relieved of responsibility, he had a principal for whom he was acting.

*Ames* v. *Holderbaum,* 44 Fed. 224, was a bill in equity filed for the foreclosure of a mortgage executed by an execu-

tor under power given him by a will which empowered the executor to "stand in his (testator's) place and stand for the purpose of managing and controlling" testator's "property," and to "negotiate loans," and "execute mortgages." The executor borrowed $6,000, for which he gave notes and executed a mortgage on land of the testator. The question arising and determined in that case was not whether the executor was liable on his express contract as shown by his notes, but whether the mortgage was valid and could be enforced against the devisees of the land. The court decided that the mortgage was valid, and nothing further.

Counsel for appellant contend that inasmuch as appellee elected to foreclose its mortgage on the land, it could not thereafter collect the deficiency from the estate of the mortgagor; that the act of foreclosure affirmed the proposition that the debt was the debt of the testator's estate and not that of the mortgagor. This position is not well taken; the notes could not have been properly filed against the estate; the foreclosure of the mortgage was a proceeding *in rem* against the mortgaged land; no personal judgment was taken against any one. In this connection counsel for appellant cite *Reissner* v. *Oxley,* 80 Ind. 580, and *Johnson* v. *Gibson,* 78 Ind. 282.

In the case first given, the court holds that parties to a contract may put their own interpretation upon it so long as the result is not a contract which is in itself unlawful; further, that when a contract is of doubtful meaning, resort may be had to proof of the situations and circumstances of the parties when they made it, and of their transactions under it, for the purpose of ascertaining the true intention. The personal covenants in the mortgage are not ambiguous. The case is not in point. In the second case, suit was brought against the president of a corporation, who had executed a mortgage given by him for the company as its president. The holder of the mortgage foreclosed it and took personal judgment against the corporation. The court

held that having treated the mortgage as the mortgage of the corporation and not that of its president, and having obtained not only a decree of foreclosure but also a personal judgment—then, upon the promise contained in the mortgage, it was properly held that he was bound by the interpretation put upon it. The Supreme Court, however, declined to decide "whether the mortgage, considered apart from all the other circumstances, is that of the corporation, or that of the" president.

In the case at bar, the notes were not filed as claims against the estate of the decedent. It is contended that if the mortgagor had paid the debt he would have been entitled to subrogation as to the mortgage. Let this be admitted. But the mortgagor did not pay the debt. There is nothing in the record to show that the land did not bring its full value; there is nothing to indicate that his rights were prejudiced by the extension of the time given to secure the debt.

The executor having warranted the title to the real estate, and having expressly promised to pay the debt for which the notes were given, became personally liable.

Judgment affirmed.