8376

IVEY v. VAUGHAN.

SINCLAIR v. VAUGHAN.

SMITH v. VAUGHAN.

WARRANTY—EXECUTORS.—Where an executor sells the real estate of his
testator after advertisement that the sale is for the purpose of
partition in accordance with the terms of the will and warrants the
title *as* executor against the executor and heirs of testator and all
persons, the executor is not personally liable for a breach of the
warranty.

MR. JUSTICE WOODS *dissents.*

*Wardeman* v. *Robertson,* Riley Ch. 115, *distinguished from this case.*

Before WILSON, J., Union, February, 1911.   Reversed.

Three cases—(1) C. G. Ivey against William Vaughan
and C. C. Vaughan.   (2) N. T. Sinclair against Same.
(3) Monroe Smith against Same.   Defendants appeal.

*Messrs. James Munro* and *J. Ashby Sawyer,* for appel-
lants, cite: *Under power of sale fee does not pass to execu-
tor:* Rice 54; 2 R. & McC. 588; 3 Rich. 418; 15 C. 256.
*Sale under power does not render seller personally liable:*
Schouber on Exors., sec. 511; 11 Ency. 1053; 88 S. C. 437.
*Intention is clear the defendants did not mean to bind them-*

*selves individually:* 94 Am. Dec. 1; 90 Am. Dec. 416; 70 Am. Dec. 643.

*Messrs. Wallace & Barron,* contra, cite: *General warranty in executor's deed binds him personally:* Riley Ch. 115; 11 Ency. 1053; 28 S. C. 468; 36 S. C. 553; 40 S. C. 93; 46 S. C. 409; 52 S. C. 143; 54 S. E. 1039.

November 26, 1912.　The opinion of the Court was delivered by

Mr. Justice Fraser.　These cases were heard together, as they involve the same question.

E. Frank Vaughan died, leaving of force his will, in which he appointed William Vaughan and C. C. Vaughan executors.　The will conferred on the defendants as executors a power of sale of certain lands, but it did not authorize the executors to warrant the title.　The will was probated on the 4th February, 1904.　On the 4th October, 1904, the executors advertised the land for sale on salesday in November, 1904.　The advertisement contained the statement, "such sale being made for the purpose of making a division of the said estate of E. Frank Vaughan, in accordance with the terms of the will."

The plaintiffs bought and the deed contained a warranty as follows: "And we do hereby bind ourselves, as executors, as aforesaid, to warrant and forever defend all and singular the premises unto the said ―――― and unto his heirs and assigns against the heirs and executors of said E. Frank Vaughan and against all persons whomsoever lawfully claiming or to claim the same or any part thereof."

The widow of E. Frank Vaughan recovered judgment for her dower against the plaintiffs.　After paying these judgments, the plaintiffs brought their suits against the defendants and seek to hold them personally liable for the breach of warranty.　The contention is that when one acting

in a fiduciary capacity gives an unautohrized warranty, he makes himself personally liable. There are some cases that seem to sustain this position, but a careful study of the cases will show that they do not.

The Court ought not to evade the law or refuse to enforce it because in the particular case, a hardship is suffered by an innocent party. The glory of the law is that implicit obedience to and strict enforcement of its every provision will work by far the most good to the most people. When, therefore, a rule of construction will always work injustice, it raises a very serious question as to whether it is the rule or no. There are general rules that have been found to poduce great hardships in many cases. To these rules well guarded exceptions have been allowed. He who asks to be exempt from the general rule must show clearly that he is within the exception.

One of these excellent rules is that a written instrument shall be construed to mean what on its face it purports to mean. There are exceptions to this rule. Sometimes the exception is made by the surrounding circumstances. Sometimes by construing two instruments as one. Sometimes to prevent that which the law forbids. Always the exception is to prevent injustice and carry out the real or lawful purpose of the parties.

This deed shows that the executors *as* executors intended to convey the lands of their testators under a power in the will and the conveyance was made *as* executors. The will was on record and all concerned were chargeable with notice of its provisions. The warranty was as much an attempt to carry out the provisions of the will as any other part of the deed. The grantee was as much charged with a knowledge of the will and its provisions as the grantors and held to an equal knowledge of the law. Cases in which personal property is sold and choses in action are transfeired, with warranty, by an unauthorized agent, are not conclusive of this case for the reason that in the sale of

personal property, authority may be by parol and the agent has a much better opportunity to know the limitations of his authority than the vendee. If the agent misleads the vendee, however innocently, he is personally responsible because of the great equitable doctrine that wherever one of two innocent persons must suffer loss, then that one must bear it who has made a loss possible. Here there was no claim of an agreement for a personal warranty, even by parol. If such had been the agreement of the parties, we cannot understand how a deed could have been given and taken attempting to limit the warranty "as executors."

We see nothing in the case to show that at the time of the execution and delivery of the deed (when the rights were fixed) there was any expectation of a personal liability by those who executed the deed "as executors," or those to whom the conveyance was made. If, therefore, these defendants are held to a personal liability, it will not be by reason of any agreement or understanding between the parties or by reason of any agreement contained in the deed, but simply because the law created one liability, from an ineffectual effort to create another.

Has the law created this arbitrary liability? If so, it ought to be enforced. Has it created the liability?

The case of *Wurdeman* v. *Robertson et al.,* Riley's Ch. 115, is relied upon as authority for the personal liability. This case has no bearing here. The Court says that Mrs. Roberts "authorized the sale made by her agent, and he warranted the title to the purchaser." Judgment was given against the principal, but the question as to the right of the agent to warrant does not seem to have been raised. Mrs. Roberts had assented to the legacy of the slave, then took it back and sold it. Mrs. Roberts knew she had no title, Mrs. Wurdeman did not. So Mrs. Roberts was held liable for the injury done.

In *Edings* v. *Brown,* 1 Rich. Law, p. 255, the contract is not given. It was only an inference that the

vendee knew that Mrs. Brown was a *feme covert.* He certainly was not chargeable with any knowledge that she was. The Court says: "The undertaking to bind another, without authority to do so, imports fraud or culpable negligence and should fix on the guilty person responsibility for the injury that may result from his act." There is certainly no ground for fraud here and the negligence, if any, was certainly equal.

In *Bank of Bamberg* v. *Wray,* 4 Strob. 91, the Court says falsehood and deceit are not necessary to charge an agent personally. Even when the agent *bona fide,* believes he has authority to contract and has not, he is personally liable. If he does not know it to be false and if that wrong produce injury to a third person who is ignorant of the grounds on which the belief of the supposed agent is founded, and who has relied on the correctness of his assertion, it is equally just that he who makes such assertion should be personally liable for the consequences.

Here the advertisement held out no hope of any personal or other guaranty. No evidence that the purchaser was misled by anything that was done or said. The warranty has not hurt the plaintiff in any respect whatsoever. The liability if it was created, was created without consideration and without agreement.

*McDowell* v. *Reed,* 28 S. C. 460, 6 S. E. 300. This was a suit on a bond signed by J. P. Reed, trustee. There was nothing in the bond to show for whom Reed was trustee or what were the terms of his trust. The term "trustee" was a mere description of the person.

In *Porter* v. *Jeffries,* 40 S. C. 92, 18 S. E. 229, the warranty was "and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said R. C. Oliver," etc. This certainly purported to be an individual warrant, and cannot be authority here.

In *Lagrone* v. *Timmerman,* 46 S. C., p. 372, 24 S. E. 290, the defendant was sued personally for issuing an unauthorized policy of insurance and he was held liable for the injury sustained by the plaintiff. Here it is conceded the plaintiffs were not entitled to a warranty and there is nothing to show that they contracted with reference to it, or that they were injured by reason of it.

In *Wallace* v. *Langston,* 52 S. C. 133, 29 S. E. 552, the bond and mortgage were given in the names of the obligors "trustees," and signed by them individually. The term "trustee" in the body of the instrument was description merely, and the signature without any description left them personally liable. On pages 153-4 the distinction is made between "trustees" and "as trustees."

See, also, *Barrett* v. *Cochran,* 11 S. C., p. 35: "The deed was to W. C. Barrett, trustee, of Mrs. Jane N. Mackey, and not to him as such trustee." The mortgage was the same.

We see no case, even where the obligee or vendee has been mislead to his injury, in which a person assuming an authority which he did not have and which he ought to have known he did not have, was held to a greater liability than the injury which he had inflicted.

There are some *dicta* in some of these cases that are broad, but the decisions themselves restrict the recovery to the injury. There was no injury here that arose from the warranty clause.

When an instrument is executed by "A. B. Executors," the term "executor" is a description of the person, i. e., that A. B. who is executor; but A. B. *as* executor bears no such interpretation.

To construe a written instrument contrary to its express terms and contrary to the intention of the parties at the time of its execution, will in all cases produce injustice and can not be the rule.

The judgment of the Court is that the judgment appealed from be reversed.

Mr. Justice Woods, *dissenting.* In these three actions the plaintiffs recovered judgments against the defendants in their individual capacity for breach of the warranty contained in the several deeds of conveyance made by the defendants as executors of the will of E. Frank Vaughan. There is no dispute as to the facts. The will of E. Frank Vaughan, probated 4 February, 1904, conferred on the executors, William Vaughan and Christopher C. Vaughan, the power to sell certain lands, but not to warrant the title. On 4 October, 1904, the executors advertised the land for sale on November salesday, the advertisement containing the statement, "such sale being made for the purpose of making a division of the said estate of E. Frank Vaughan, in accordance with the terms of the will." The plaintiffs having bid off certain tracts at the sale made in accordance with the advertisement, the executors made a separate conveyance to each of them, in which they recited the probate of the will, the power of sale conferred thereby, and the sale to the guarantees, and then undertook to warrant the title in the following form: "And we do hereby bind ourselves as executors as aforesaid to warrant and forever defend, all and singular, the premises unto the said C. G. Ivey, and unto his heirs and assigns, against the heirs and executors of said E. Frank Vaughan, and against all persons whomsoever lawfully claiming or to claim the same, or any part thereof." Afterwards the widow of testator recovered judgment for dower against the plaintiffs for one-sixth of the value of the land purchased. After paying these judgments, the plaintiffs sued the defendants personally on the warranties and the Circuit Judge directed verdicts in their favor for the amounts paid and interest thereon.

14—93

The appeals turn on the question whether the defendants made themselves personally liable by undertaking to warrant, as executors, when the will contained no power to warrant.

The rule established beyond all controversy in this State and recognized everywhere is thus stated in *Edings* v. *Brown,* 1 Rich. 255: "Whenever one undertakes to make a contract in the name of another, his signature should be held as a guaranty that he has authority to bind the principal. It is only just that one who pretends to give a security to another, by assuming to contract in the name or a person whom he has no authority to bind, should supply, out of his own means, the security which he fails to impose on his principal." It makes no difference that the agent or trustee expressed in the contract the intention to bind only the person or the estate in whose favor he undertook to contract. He is presumed to know the extent of his authority, and he warrants its extent and sufficiency to those with whom he deals. In *Edings* v. Brown the defendant, R. E. Brown, signed a bill of sale of a negro, "Catherine Brown, L. S., per R. E. Brown, trustee." By the signature in this form he clearly expressed his intention to contract as trustee for another and not for himself. The paper contained a warranty of soundness, and the Court laying down the rule above stated held that, inasmuch as Catharine Brown was a married woman and so could not be made liable on the warranty, R. E. Brown made himself personally liable. The rule has been many times restated: *Bank of Hamburg* v. *Wray,* 4 Strob. 87; *McDowall* v. *Reed,* 28 S. C. 466, 6 S. E. 300; *Porter* v. *Jeffries,* 40 S. C. 92, 18 S. E. 229; *Lagrone* v. *Timmerman,* 46 S. C. 372, 24 S. E. 290; *Wallace* v. *Langstan,* 52 S. C. 133, 29 S. E. 552. In nearly all of these cases the Court quotes with approval the following statement of the law, made in 2 Story's Eq. 975: "In general a trustee is only suable in equity in regard to any mat-

ter touching the trust. But if he chooses to bind himself by a personal covenant in any such matter, he will be liable at law for a breach thereof, although he may in the instrument containing the covenant describe himself as covenanting as trustee; for the covenant is still operative as a personal covenant, and the superadded words are but a *descriptio personae."* .

An executor or an administrator is not an agent, but a trustee, charged with the duty of winding up the estate in his hands. He has no power to make new contracts binding on the estate except as specially authorized by a will or by the orders of the Court. Hence, whenever he undertakes to make a new contract without such special authority or beyond it, he is held to bind himself, since he cannot bind the trust estate. This doctrine was laid down in *Pearce* v. *Smith,* 2 Brev. 360, and is generally recognized; *McDowell* v. *Reed, supra; Porter* v. *Jeffries, supra.*

In *Wurdeman* v. *Robertson et al.,* Riley Ch. 115, the question arose as to the personal liability of an executrix on her warranty. Mrs. Roberts, executrix, sold without authority certain slaves to Mrs. Wurdeman, expressly warranting the title. Mrs. Wurdeman, having lost the slaves by a superior title, brought an action on the warranty against Mrs. Roberts personally to recover the purchase money. In sustaining the demand, the Chancellor said: "Mrs. Wurdeman being warned that there might be a doubt as to the title, does not exonerate from responsibility. Mrs. Roberts, who was executrix under the will, had the legal title in her, and knew better than Mrs. Wurdeman whether she could or not make a legal sale, and give a legal title; she decided that she could, and gave, through her agent, a warranty title; the warranty has failed, and I hold her responsible."

The leading case of *Sumner* v. *Williams,* 8 Mass., 162, 5 Am. Dec. 83, was decided on facts exactly like those of this case. Administrators selling under an order of Court,

which conferred no power to do so, undertook to warrant the title, specifying with particularity that they were giving the warranty in their capacity as administrators. It was held that, as the administrators had no authority to bind the estate by the warranty, they had bound themselves personally. We cite only a few of the many cases in which the principle has been stated and applied to transactions of executors and other trustees: *Duvall* v. *Craig et al.,* 2 Wheat. 454, L. Ed. 180; *Taylor* v. *Mayo,* 110 U. S. 330, 28 L. Ed. 163; *Schmittler* v. *Simon,* 101 N. Y. 554, 5 N. E. 452, 54 Am. Rep. 737; *Mitchell* v. *Hazen,* 4 Conn. 495, 10 Am. Dec. 169; Note to *Allen* v. *Sayward,* 17 Am. Dec. 224; note to *Schlicker* v. *Hemenway,* 52 Am. St. Rep. 121; *DeCoudres* v. *Union Trust Co.,* 25 Ind. App. 271, 58 N. E. 90, 81 Am. St. Rep. 95; *Thompson* v. *Mann,* 65 W. Va. 648, 64 S. E. 920, 131 Am. St. Rep. 987.

The reasons for the rule we have stated have been so often set out in the cases cited that elaboration would be out of place. That the reasons are strong will be made evident by any study of the subject. It is true, application of the rule may sometimes work hardship, but even if the reasons against it were stronger than those in its favor, they are not strong enough to warrant the Court in changing a rule of property, established by unbroken precedent in this State and the consensus of judicial opinion elsewhere. It may be, if the estate derived benefit from the contract of warranty in increased price for the land, the defendants would have an equity for reimbursement from the estate to the extent of the benefit; but that point is not before us. For these reasons I think the judgment should be affirmed.

JUDGE HYDRICK *disqualified.*